Nigist SHOAFERA, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 98–70565.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 2000.

Filed Sept. 7, 2000.

Dissenting Opinion Amended
Dec. 11, 2000.

Gary Silbiger, Silbiger & Honig, Los Angeles, California, for the petitioner-appellant.

Ann V. Crowley and Paul Kovac, Office of Immigration Litigation, Department of Justice, Washington, DC, for the respondent-appellee.

Before: WALLACE, PREGERSON, and THOMAS, Circuit Judges.

PREGERSON, Circuit Judge:

Nigist Shoafera, a native and citizen of Ethiopia, petitions this court for review of a final order of the Board of Immigration Appeals ("BIA") denying her request for asylum and withholding of deportation. We have jurisdiction pursuant to 8 U.S.C. § 1105(a), as modified by the "transitional rules" under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). *See* Section 309(c)(4) of IIRIRA. We grant the petition and remand for further proceedings consistent with this opinion.

I

Shoafera, a thirty-one-year-old citizen of Ethiopia, is of Amharic ethnicity. She entered the United States on a visitor's visa in January 1990. On February 1, 1992, Shoafera filed an application for asylum and withholding of deportation. On December 22, 1995, Shoafera was placed in deportation proceedings under an Order to Show Cause. Shoafera conceded deportability at that time, but renewed her request for asylum and withholding of deportation.

A merits hearing was held before an Immigration Judge ("IJ") on October 9, 1996. At the hearing, Shoafera testified that she fears that she will be persecuted if she is returned to Ethiopia. Shoafera explained that when she was in Ethiopia she worked for a man named Hagos Belay, a Tigrean, who held a high-ranking position in her kebele.[1] One night, after a meeting of the kebele, Belay forced Shoafera to go to a local park where he beat her and raped her at gunpoint. After the rape, Belay left Shoafera in the park. She was physically unable to get up and walk home. Eventually, some people in the park found Shoafera and took her to the hospital. At the hospital, Shoafera was treated by Dr. Ethiopia Fikru. In support of her asylum claim, Shoafera submitted a medical report from Dr. Fikru that corroborated her testimony that she had been raped.

The hospital called Shoafera's brother, Berhanu, and informed him what had happened. Berhanu came to the hospital and Shoafera begged him to report the incident to the police. Initially he refused because he feared that if he reported the rape to the police, Belay would kill Shoafera. But Shoafera felt strongly that the rape should be reported and she convinced Berhanu to do so. The police arrested Belay, but released him from jail after only one month. Belay did not receive any further punishment.

Shoafera testified that she believed that Belay raped her because of her Amharic ethnicity. During her hearing, the following exchange occurred:

[Q.] Now, with regard to the rape, do you have any idea—and I know this is a difficult question, but do you have any idea why Hagos Belay did this to you?

[A.] I just—He probably was attracted to me. I don't know.

Q. Aside from the fact that he may have been attracted to you, can you think of any other circumstances or factors that might have made you an easier target for him, or someone who he felt he could do this to?

A. 'Cause I'm an Amhara. If I was a Tigrean he wouldn't do it.

Shoafera's sister, Fere Hiuwof, a lawful permanent resident of the United States, also testified that Belay raped Shoafera because of her Amharic ethnicity.

While Belay was in jail, Shoafera continued to live at home in her kebele. But after the police released Belay, Shoafera moved to a different kebele, where she stayed with a friend. She testified that she did not feel safe in the other kebele because she learned that Belay was looking for her. Shoafera further testified

---

1. A "kebele" is a community based organization affiliated with the Ethiopian government.

*See Getachew v. INS,* 25 F.3d 841, 843 (9th Cir.1994).

that she did not believe that there was any protection for her in any part of Ethiopia. She testified that several months after Belay was released from police custody she left Ethiopia and came to the United States.

Belay currently works for the Tigry-dominated Ethiopian government. He is in charge of the kebele where Shoafera used to live. Belay continues to look for Shoafera and remains angry at her for reporting the rape to the police. Shoafera stated in a declaration, "I am sure that Hagos Belay will do any harm to me if he finds me in Ethiopia. His power now is more than what he had under the Mengistu regime."

Additionally, Shoafera and her sister both testified that Belay has used his political power and influence to keep Shoafera's brother, Berhanu, in prison. Berhanu was imprisoned in 1994 after attending a demonstration as a member of the All Amhara Peoples Organization ("AAPO"). The Ethiopian government never tried Berhanu for his alleged crime. Other AAPO members who attended the same demonstration have been released from prison. Shoafera's other brother, Nakati, also believes that Belay has used his political influence to ensure that Berhanu is not released from prison.

As part of the administrative record, Shoafera submitted materials documenting the conditions in Ethiopia. One report confirmed that rape remains a "pervasive social problem" in Ethiopia. Another document, the 1995 State Department Report on Ethiopia, noted that there is discord among various ethnic groups in Ethiopia and that some Amharas "have died in ethnic clashes." The State Department Report also acknowledged that "[a]t various times in recent years, ethnic clashes occurred in many parts of Ethiopia."

Despite the uncontested testimonial and documentary evidence, the IJ ruled that Shoafera was not eligible for asylum. In making his ruling, the IJ did not question Shoafera's credibility. In fact, the IJ stated, "The Court certainly finds that the respondent's claim and testimony is credible in regard to the incident which occurred to her." But the IJ concluded that Shoafera did not establish that Belay raped her on account of her Amharic ethnicity. Instead, the IJ concluded that Belay raped Shoafera because he was "a man who believed that he had the authority and impunity to carry out his sexual depravities." The BIA affirmed the decision of the IJ, concluding that "[a]lthough the respondent testified that she was raped because of her Amharic ethnicity, she did not adequately support this assertion." Shoafera timely petitioned this court for review of the BIA's final order.

## II

Where the BIA conducts de novo review, as it did here, "our review is limited to the BIA's decision, except to the extent that the IJ's opinion is expressly adopted." *Garrovillas v. INS*, 156 F.3d 1010, 1013 (9th Cir.1998). "We will uphold the BIA's denial of asylum if it is supported by reasonable, substantial and probative evidence in the record." *Velarde v. INS*, 140 F.3d 1305, 1309 (9th Cir.1998) (citing *INS v. Elias-Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)). Although review is limited to the administrative record, "we will consider the record as a whole, including evidence which contradicts the BIA's findings." *Id.* We accept Shoafera's testimony as undisputed because the IJ found her testimony credible and the BIA did not disagree. *See Maini v. INS*, 212 F.3d 1167, 1173 (9th Cir.2000); *Reyes-Guerrero v. INS*, 192 F.3d 1241, 1244 (9th Cir.1999).

To establish eligibility for asylum, an alien must show that he or she is a refugee within the meaning of 8 U.S.C. § 1101(a)(42)(A). To establish refugee status, Shoafera must show that she is unable or unwilling to return to her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* "A well-founded fear of future

persecution may be established by proving either past persecution or 'good reason' to fear future persecution." *Navas v. INS,* 217 F.3d 646, 654 (9th Cir.2000).

■ "It is well-settled law of this circuit that eligibility for asylum may be based on past persecution alone, even absent a well-founded fear of future persecution." *Lopez–Galarza v. INS,* 99 F.3d 954, 959 (9th Cir.1996) (citations omitted). "Persecution" is defined as " 'the infliction of suffering or harm upon those who differ (in race, religion or political opinion) in a way regarded as offensive.' " *Id.* (quoting *Prasad v. INS,* 47 F.3d 336, 339 (9th Cir.1995)). It is clear that rape or sexual assault "may constitute persecution." *Id.;* see also *Lazo–Majano v. INS,* 813 F.2d 1432 (9th Cir.1987), *overruled on other*

grounds by *Fisher v. INS,* 79 F.3d 955 (9th Cir.1996) (en banc). Here, Shoafera established that she suffered past persecution because she was raped by a government official, Hagos Belay. Thus, the issue in this case is whether Shoafera established that she was persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion. *See Lopez–Galarza,* 99 F.3d at 958. To do so, Shoafera "must present some evidence, direct or circumstantial, of the persecutor's motive." *Id.*

■ Shoafera contends that she suffered persecution on account of her Amhara ethnicity.[2] Shoafera testified that Belay raped her, "[c]ause I'm an Amhara. If I was a Tigrean he wouldn't do it." Because Shoafera testified credibly,[3] and

2. Throughout this opinion we use the term "ethnicity" to designate the ground on account of which Shoafera was persecuted. In the past, this court has used the term "race,"although slightly different in meaning, in lieu of the term "ethnicity." *See Duarte de Guinac v. INS,* 179 F.3d 1156 (9th Cir.1999). In this case, we choose to use the more precise term "ethnicity," rather than "race." As we explained in *Duarte de Guinac,* the term "ethnicity" describes "a category which falls somewhere between and within the protected grounds of 'race' and 'nationality.' " 179 F.3d at 1159 n. 5.

3. The record does not support the dissent's characterization of the IJ's finding as a "partial adverse credibility determination." Rather, the record indicates that the IJ believed Shoafera's testimony, but simply ruled that she did not establish her eligibility for asylum.

Moreover, the law of this circuit does not permit implicit adverse credibility determinations. *See e.g. Stoyanov v. INS,* 172 F.3d 731, 736 (9th Cir.1999); *Garrovillas,* 156 F.3d at 1013; *Lopez–Reyes v. INS,* 79 F.3d 908, 911 (9th Cir.1996); *Osorio v. INS,* 99 F.3d 928, 931 (9th Cir.1996); *Hartooni v. INS,* 21 F.3d 336, 342 (9th Cir.1994); *Artiga Turcios v. INS,* 829 F.2d 720, 723 (9th Cir.1987). As we explained in *Canjura–Flores v. INS,* 784 F.2d 885, 888–89 (9th Cir.1985), without an adverse credibility finding we accept a petitioner's testimony as credible because "[a]ny other rule would put us in the position of second-guessing the credibility of the petitioner on appeal when no doubts have been raised by the Immigration Judge or the Board." Con-

sequently, the IJ "must have 'a legitimate articulable basis to question the petitioner's credibility," and must express "a specific, cogent reason for any stated disbelief.' " *Garrovillas,* 156 F.3d at 1013 (emphasis added) (quoting *Osorio* ). Indeed, any such reasons for doubting a petitioner's credibility must be "substantial and must bear a legitimate nexus to the finding." *Id.* (citation omitted); *Akinmade v. INS,* 196 F.3d 951, 954 (9th Cir. 1999); *Turcios v. INS,* 821 F.2d 1396, 1399 (9th Cir.1987). "Generalized statements that do not identify specific examples of evasiveness or contradiction in the petitioner's testimony" are insufficient. *Garrovillas,* 156 F.3d at 1013.

Here, IJ did not state that Shoafera failed to testify credibly or was evasive. In fact, at no time did the IJ indicate that Shoafera said or did *anything* to suggest that she was not testifying credibly. Nor did the IJ find that Shoafera's testimony was contradictory or that her demeanor indicated that her testimony was not truthful. Rather, the only statement that the IJ made about Shoafera's testimony was that he found it "credible."

The dissent quotes a statement made by the IJ and asserts that in the statement the IJ found Shoafera's testimony about the motivations behind the rape not credible. But a closer look at the statement reveals that the dissent reaches to find an adverse credibility determination where there is none. In the statement the IJ explains why, despite Shoafera's *credible testimony* (and the testimony of her sister), he concludes that she did not establish that she is eligible for asylum. It is clear that an IJ can believe that an asylum applicant is credible and still determine that

the government failed to produce any contradictory evidence, all facts testified to by Shoafera "must be taken as true." *Velarde*, 140 F.3d at 1312. *See also Ladha v. INS*, 215 F.3d 889, 900 (9th Cir.2000) ("when an alien credibly testified to certain facts, those facts are deemed true"); *Yazitchian v. INS*, 207 F.3d 1164, 1168 (9th Cir.2000) ("Because the immigration judge found [the petitioners'] testimony credible, and the BIA did not make a contrary finding, we must accept as undisputed the facts as petitioners testified to them.").

As noted above, the IJ explicitly found that Shoafera's testimony was "credible," but denied her claim for asylum because he ruled that her "speculations and conclusions [did] not prove her claim." At the hearing, the INS and the IJ had the opportunity to question Shoafera to establish whether her testimony that Belay raped her because she is an Amhara was merely "speculation." Indeed, the relevant statute states that an IJ "shall administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses." 8 U.S.C. § 1229a(b)(1). Moreover, we have recently noted that "the duty of the immigration judge is analogous to that of the administrative law judge in social security disability cases" and thus, the IJ "has a duty to 'fully and fairly develop the record.'" *Jacinto v. INS*, 208 F.3d 725, 732–33 (9th Cir.2000) (citations omitted). But neither the IJ nor the INS elicited any testimony from Shoafera demonstrating that the nature or basis for her testimony was questionable. A bald assertion that Shoafera's credible testimony was "speculation" is insufficient. Some evidence or support for that conclusion must be offered.

Furthermore, we have repeatedly emphasized that "asylum applicants are not required to produce documentary evidence" to support their claims of persecution. *See Aguilera–Cota v. INS*, 914 F.2d

1375, 1380 (9th Cir.1990); *accord Velarde*, 140 F.3d at 1310 n. 5; *McMullen v. INS*, 658 F.2d 1312, 1319 (9th Cir.1981) ("[I]t is difficult to imagine what other forms of testimony the petitioner could present other than his own statement."). We have also emphasized that "[b]ecause asylum cases are inherently difficult to prove, an applicant may establish his case through his [or her] own testimony alone." *Garrovillas*, 156 F.3d at 1016–17; *Sangha v. INS*, 103 F.3d 1482, 1487 (9th Cir.1997) (citing *Bolanos–Hernandez v. INS*, 767 F.2d 1277, 1285 (9th Cir.1984)). Accordingly, we conclude that Shoafera's uncontroverted and credible testimony is sufficient to establish that she was persecuted on account of ethnicity. *See e.g., Molina v. INS*, 170 F.3d 1247, 1250 (9th Cir.1999); *Garrovillas*, 156 F.3d at 1016; *Sangha*, 103 F.3d at 1487; *Lopez–Reyes*, 79 F.3d at 912.

Moreover, we note that Shoafera's testimony was not without corroboration. Her sister also testified that Belay raped Shoafera because she is an Amhara. And Shoafera submitted documentary evidence which verified the ongoing ethnic conflict in Ethiopia and established that Amharas are often targets of such violence.

We acknowledge that Shoafera also said that Belay might have raped her because he thought she was attractive. That Belay might have had more than one motivation for raping Shoafera does not in itself defeat her asylum claim. An en banc panel of this court recently explained that "[a]n applicant for asylum need not show conclusively why persecution occurred in the past .... the applicant [simply] must produce evidence from which it is reasonable to believe that the harm was motivated, at least *in part*, by an actual or implied protected ground.'" *Borja v. INS*, 175 F.3d 732, 736 (9th Cir.1999) (en banc) (emphasis added) (citation omitted); *see also Matter*

---

the applicant did not prove that he or she is eligible for asylum. To quote the IJ:

> The Court, therefore has considered the alien's claims, and although *finding the alien's claims certainly to be credible*, i.e.,

are not fabricated or exaggerated, are claims that do not meet the requirements of the law, i.e., are not based upon race, religion, nationality, political opinion, or membership in a particular social group.

*of Fuentes,* 19 I & N Dec. 658, 662, 1988 WL 235456 (BIA 1988) ("an applicant does not bear the unreasonable burden of establishing the exact motivation of a 'persecutor' where different reasons for actions are possible"). Given the evidence in the record, including Shoafera's credible testimony and the testimony of her sister, we conclude that Shoafera was persecuted, in part, because of her Amhara ethnicity.[4] *See Borja,* 175 F.3d at 736.

A finding of past persecution triggers a regulatory presumption that the applicant has a well-founded fear of future persecution. *See Surita v. INS,* 95 F.3d 814, 821 (9th Cir.1996). To rebut this presumption, the INS must show, "by a preponderance of the evidence, that 'since the time the persecution occurred conditions in the applicant's country ... have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if ... [she] were to return.'" *Singh v. Ilchert,* 69 F.3d 375, 378 (9th Cir.1995) (per curiam) (quoting 8 C.F.R. § 208.13(b)(1)(i)). "'[I]ndividualized analysis' of how changed conditions will affect the specific petitioner's situation is required. Information about general changes in the country is *not* sufficient." *Borja,* 175 F.3d at 738 (emphasis added) (citation omitted).

Because the BIA did not consider Shoafera's application in light of the presumption created by past persecution, *see* 8 C.F.R. § 208.13(b)(1)(i), we remand to the BIA so that it may undertake that inquiry.[5] *See Osorio,* 99 F.3d at 933 (9th Cir.1996). The BIA is confined to examining the existing record to determine whether the INS has carried its burden of rebutting the presumption. *See Navas,* 217 F.3d at 662 (noting that the "INS is required to make a complete record during the administrative proceedings.").

### III

We conclude that Shoafera suffered past persecution on account of ethnicity, thus triggering a regulatory presumption that she is eligible for asylum. This presumption can be overcome only by an individualized analysis of Shoafera's situation which demonstrates that changed conditions in Ethiopia have eliminated the basis for her individual fear of future persecution. *See Osorio,* 99 F.3d at 933. We remand to the BIA to determine whether the INS has produced sufficient evidence to overcome the presumption in Shoafera's favor and for such further proceedings as are necessary to determine Shoafera's immigration status.

Petition GRANTED. REMANDED to the BIA for further proceedings.

WALLACE, Circuit Judge, dissenting:

The majority concludes that we must accept as credible Shoafera's testimony concerning Belay's motivation for raping her, and that Shoafera's testimony, together with her sister Hiuwof's similar testimony, is substantial evidence that compels reversal. I disagree with both conclusions and, therefore, I dissent.

We review a determination of ineligibility for asylum for substantial evidence. *Marcu v. INS,* 147 F.3d 1078, 1080 (9th

---

(Emphasis added).

4. Because we find that Shoafera established that she suffered past persecution on account of ethnicity, we do not address the other claims raised in her brief on appeal.

5. Remand is not necessary in all cases similar to the present one. *See e.g., Chand v. INS,* available at 222 F.3d 1066 (9th Cir.2000) ("remand is not appropriate where the record clearly shows that the country conditions material in the record will not serve to rebut the presumption"); *Navas,* 217 F.3d at 662 (re-

mand is unnecessary where past persecution has been established "but the INS has failed to introduce the requisite country conditions information and thus has failed to meet its evidentiary burden on that issue...."); *Yazitchian,* 207 F.3d at 1169 (citing *Duarte de Guinac,* 179 F.3d at 1164) (remand is unnecessary "where the country conditions evidence supports rather than controverts the petitioner...."). We remand in the present case because it is unclear whether the country conditions in the record serve to rebut the presumption.

Cir.1998). This standard is "extremely narrow" and "highly deferential" to the immigration judge (IJ) and Board of Immigration Appeals (Board). *Id.* As the majority concedes, we will affirm the Board if its decision is "supported by reasonable, substantial and probative evidence in the record." *Ante* at 1073. Before we grant a petition for review and reverse the Board, however, we must be convinced that the petitioner's evidence not only supports, but *compels* reversal. *INS v. Elias–Zacarias,* 502 U.S. 478, 481 & n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). In words Judge Pregerson has several times written for the court to explain the substantial evidence standard, "conjecture is not a substitute for substantial evidence." *Abovian v. INS,* 219 F.3d 972, 979 (9th Cir.2000) (citation omitted); *Chanchavac v. INS,* 207 F.3d 584, 590 n. 4, 592 (9th Cir.2000) (citation omitted); *Lopez–Reyes v. INS,* 79 F.3d 908, 912 (9th Cir.1996) (citation omitted).

To succeed in her asylum application, Shoafera has the burden to prove, among other things, that she has a well-founded fear of persecution on account of a protected group: race, religion, nationality, social group, or political opinion. *Fisher v. INS,* 79 F.3d 955, 960 (9th Cir.1996) (en banc).

Even assuming the majority is correct on what testimony the IJ and the Board found to be credible, an issue I will address later, I disagree with the majority's holding that Shoafera's and Hiuwof's unsupported testimony is substantial evidence that compels us to reverse the Board's decision. Presenting *credible* evidence that one is entitled to asylum does not mean one has put forward *substantial* evidence that one is entitled to asylum. *See Diaz–Escobar v. INS,* 782 F.2d 1488, 1492 (9th Cir.1986). In addition, to overturn the Board before our court, an alien must establish that her evidence is not only substantial but compelling. *Elias–Zacarias,* 502 U.S. at 481 n. 1, 112 S.Ct. 812. Again, personal speculation and conjecture is not sufficient to satisfy the substantial evidence standard. *Abovian,* 219 F.3d at 978–79.

During Shoafera's asylum hearing, she was asked why Belay might have raped her. Her immediate response was: "I just—He probably was attracted to me. I don't know." Only after her attorney coaxed her further with an open-ended question did she opine that she was raped " 'Cause I'm an Amhara. If I was a Tigrean he wouldn't do it." She also stated that Belay might have taken advantage of her because she was vulnerable inasmuch as there were no men in her family, like a father or a brother, who lived close enough to protect her. Hiuwof, Shoafera's sister, who was not present during the rape, also testified that Belay raped Shoafera because "she's Amhara and he doesn't like her." Neither Shoafera nor Hiuwof provided any support for their assertion of Belay's ethnic animus—neither claim that he said anything to Shoafera about her being an Amhara, or that he was notorious for targeting Amharas, or that he committed other crimes or offenses against Amharas. *Cf. Kozulin v. INS,* 218 F.3d 1112, 1116 (9th Cir.2000) (upholding Board's finding that physical assault was not politically motivated, in part, because "no evidence suggests that the attackers in any way expressed their motivation").

Even if we were to accept Shoafera's statement that she was raped because, among other reasons, she was an ethnic Amhara, it does not necessarily follow that this is substantial, much less compelling, evidence. The result of the majority's holding would be that any alien who has been raped by someone of a different ethnicity could testify in a deportation proceeding that she was raped because of her ethnicity and, without stating more, successfully rest her case. Such a result stretches beyond logic the requirement that an asylum applicant prove "by credible, direct, and specific evidence," that she has a well-founded fear of persecution on account of her membership in a protected group. *Fisher,* 79 F.3d at 960.

Of course, Shoafera may rely upon her own testimony. *Ante* at 1075. However,

her testimony must be more than mere speculation for us to accept it as compelling evidence. *Abovian,* 219 F.3d at 978–79. In cases involving rape or the threat of rape in which we have granted an alien's petition for review and reversed the Board, the alien presented more than just her opinion as to motive. For instance, in *Lazo–Majano v. INS,* 813 F.2d 1432 (9th Cir.1987), *overruled on other grounds by Fisher,* 79 F.3d at 963, the asylum applicant testified that her rapist (her employer) had told both her and others at various times that he imputed to her a different political opinion ("subversive") than his own. *Id.* at 1433, 1435. Likewise, in *Lopez–Galarza v. INS,* 99 F.3d 954 (9th Cir.1996), it was clear that the asylum applicant, who was thought to support the Nicaraguan Contras, had been raped, imprisoned, and beaten by the Sandinista military because of her political opinion: among other things, her persecutors told her so verbally and painted "Death to the contras" on her family's home. *Id.* at 957. The asylum applicant in *Surita v. INS,* 95 F.3d 814 (9th Cir. 1996), a citizen of Fiji of Indian descent and Hindu religion, was told directly by her ethnic Fijian persecutors to return to India and to leave Fiji for ethnic Fijians; additionally, ethnic Fijians desecrated the Hindu temple where she worshiped. *Id.* at 818.

In these cases, the asylum applicants rested on more than mere personal speculation as to the cause of their persecution. They supported their assertions with at least some direct evidence that their persecutors antagonized them because they were a member of a protected class. Such support is utterly lacking in Shoafera's case. She had the burden to prove a nexus between her persecution and her membership in a protected class. *Fisher,* 79 F.3d at 960. She did not do so. The majority cannot properly blame the IJ or the Immigration and Naturalization Service for this deficit: the burden of proof does not magically move away from Shoafera. To use the majority's language, Shoafera "had the opportunity ... to es-

tablish [that] her testimony that Belay raped her because she is an Amhara was [more than] mere 'speculation.'" Ante at 1075. But her attorney did not question Shoafera further on this issue. This demonstrates Shoafera failed to meet her burden of proof.

The majority makes no attempt to explain why speculation, even if credible, suffices for substantial evidence in this case. Not only does this show we should not grant the petition, but the issue becomes conclusive when we look more carefully at the credibility issue. Therefore, I now turn to a discussion of the majority's holding that we must assume Shoafera's testimony to be credible.

We presume that an alien testified credibly when the IJ does not make an adverse credibility finding. Ante at 1074–75. However, it is well established that "deference must be given 'to the immigration judge's express and implied determination concerning credibility where the record supports this finding.'" *Diaz–Escobar,* 782 F.2d at 1492, *quoting Saballo–Cortez v. INS,* 761 F.2d 1259, 1266 (9th Cir.1984). The majority asserts that this circuit "does not permit implicit adverse credibility determinations." Ante at 1074 n. 3. The majority's citations in support of this proposition *do not specifically reject* the notion of implied adverse credibility determinations at all but merely state that credibility determinations "must have a legitimate articulable basis to question the petitioner's credibility, and must offer a specific, cogent reason for any stated disbelief." *Garrovillas v. INS,* 156 F.3d 1010, 1013 (9th Cir.1998) (quotations omitted). As will be seen later, the IJ did have a basis for an implied adverse credibility finding and did give a reason for the finding. Our statement in *Diaz–Escobar* quoted above ("implied determination")—itself a quotation from *Saballo–Cortez*—demonstrates the majority's error. Unfortunately, in its enthusiasm to reverse the Board, the majority establishes an unnecessary conflict in our case law. In Shoafera's case, the IJ

made a partial adverse credibility determination, which the majority simply ignores.

The IJ commented on Shoafera's credibility in his oral decision. Regarding her testimony that she was actually raped and that she thought it might be because she was attractive, the IJ stated:

> The Court certainly finds that the respondent's claim and testimony is credible in regard to the incidents which occurred to her....
>
> The respondent's testimony is clear to the Court that this individual, i.e., her sexual attacker, was one who was attracted to her as a young attractive female without someone to protect or defend her and took advantage of her through his authority and government position [and] use of a weapon....

However, fatal to Shoafera's asylum application, the IJ also found her testimony concerning the ethnic motivations behind the rape to be without credibility:

> The respondent's claim separately, however, is that because she is an Amharic; an ethnic minority, and at least associated or at least participated at one time with the [All Amhara People's Organization], that she would be facing what she believes is political persecution, again from this individual. The respondent's speculations, however, and they are the Court believes speculations and conclusions, do not prove her claim. The evidence she presents and the facts she presents are one of personal vendetta and revenge. One of sexual advances and abuses by a man who believed that he had the authority and the impunity to carry out his own sexual depravities.
>
> They were unrelated, the Court believes, to any ethnic, let alone political activities of the individuals....

I read this passage from the IJ's decision to be a finding that Shoafera's testimony concerning Belay's ethnic motivations was not credible. The Board made the same finding. As is evident from the full quotation of the IJ's statement, the basis for his finding was the ample evidence Shoafera presented concerning Belay's power and desire for personal revenge.

We should invoke the presumption in favor of credibility only when there is no adverse credibility finding. But here, there was an adverse credibility finding by both the IJ and the Board. The majority simply ignores the fact that the IJ and the Board made a partial adverse credibility finding and rejected Shoafera's testimony regarding the ethnic motivations of her attacker.

Even a cursory review of the record shows ample support for the Board's finding that Shoafera was targeted for personal and not ethnic reasons. In testimony the IJ regarded as credible, Shoafera stated that she was raped because she was attractive. She and Hiuwof testified that rape typically goes unreported in Ethiopia for social reasons. Because of this fact, Belay apparently assumed he would not be brought to justice. When Shoafera insisted that her brother report the rape, Belay was imprisoned for one month. Hiuwof opined that upon his release, Belay was "mad" because he had been reported and imprisoned, and that he sought revenge against Shoafera. These facts paint a picture of a man of power who raped Shoafera because she was vulnerable and attractive, not because she was an Amhara; a man who sought revenge when she had his crime reported to the authorities. The fact that Shoafera's brother, jailed for participation in a pro-Amhara demonstration in 1994, is still in jail, purportedly because of Belay's influence, while many of the other Amhara demonstrators have been released further supports a conclusion that Belay seeks revenge against Shoafera because she reported the rape, not because she is an Amhara.

Rape is not a ground for asylum. It becomes relevant only in those cases in which it was done on account of membership in a protected group. *Lopez–Galarza*, 99 F.3d at 959. I do not feel compelled to reverse the Board's view that Shoafera

failed to prove that her rape was ethnically motivated.  I would deny the petition.