**Hakob HOVSEPYAN, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

**No. 04–70677.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 2007.

Filed Feb. 23, 2007.

---

Katie Lien, David L. Ross, Esq., Ross, Rose & Hammill, LLP, Beverly Hills, CA, for Petitioner.

Office of the District Counsel, Department of Homeland Security, Los Angeles, CA, Ronald E. Lefevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Lisa W. Edwards, Esq., DOJ–U.S. Department of Justice, Civil Rights Division/Appellate Section, John Battaglia, Esq., U.S. Dept of Justice Civil Rights Division/Housing/Civil, Washington, DC, for Respondent.

Before: FERGUSON, SILER,* and HAWKINS, Circuit Judges.

## ORDER

This case is referred to the Circuit Mediation Office to explore a possible resolution of Hovsepyan's asylum claim through mediation.

The mandate is withheld pending further order from this panel or the Chief Circuit Mediator.

## MEMORANDUM **

Hakob Hovsepyan ("Hovsepyan") appeals from the BIA's summary affirmance of the Immigration Judge's denial of his application for asylum and withholding of removal. We grant his petition and remand for further proceedings.

For purposes of this appeal, we assume Hovsepyan is a Yezidi Kurd, as described in his application for asylum. The transcript from the asylum hearing consistently reflects his testimony that he is an "Acetic" Kurd, which is apparently a phonetic spelling of "Yezidi." Hovsepyan also describes his religion as worshiping fire, which is consistent with being Yezidi.[1] The IJ, who found Hovsepyan's testimony entirely credible and consistent with his application, apparently meant to hand-correct the transcription misspelling in her ruling, but substituted "Azeri" for "Acetic."[2] It therefore seems clear that the IJ's reference to Hovsepyan as Azeri is a scrivener's error, and that Hovsepyan has consistently referred to himself as Yezidi throughout the process.

With respect to the asylum claim, while substantial evidence supports the IJ's conclusion that Hovsepyan's loss of employment was discrimination, but not "the type of economic deprivation that ris-

---

* The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

1. According to the State Department's Country Conditions report on Armenia, Yezidis practice a religion drawing elements from "Zoroastrianism, Islam, and animism." Zoroastrianism is commonly referred to as "fire-worship." Oxford English Dictionary, www.oed.com.

2. Azeris are distinct from Yezidis, and are not a recognized community in Armenia, as there are only a few hundred remaining in the country following the Nagorno–Karabakh conflict. Indeed, Hovsepyan's own application discusses the conflict and notes that an Armenian nationalist group "killed the cruel and dangerous Azeries."

es to the level of persecution," *Nagoulko v. INS,* 333 F.3d 1012, 1016 (9th Cir.2003), substantial evidence does not support the IJ's determination that the visits to Hovsepyan's home by the "Fenians" were not "on account of" Hovsepyan's race, religion or membership in a particular social group. Hovsepyan testified that the Fenians were targeting minority groups in Armenia, and an applicant's "uncontroverted and credible testimony is sufficient to establish that [he] was persecuted on account of ethnicity." *Shoafera v. INS,* 228 F.3d 1070, 1075 (9th Cir.2000). Moreover, the Country Conditions Report confirms that Yezidis are a minority of only 20,000 in Armenia who report frequent societal and governmental discrimination.

■ Similarly, substantial evidence does not support the IJ's determination that the Fenians were not a group the government was unable or unwilling to control. Even though Hovsepyan did not report the first incident to the authorities, he testified that he reported the June incident and that the Militia took no further action about the matter, and also appears to relate another incident with a lack of police response.[3] The Country Conditions Report clearly supports Hovsepyan's position, specifically reporting that Yezidis complain of a "lack of police response to serious crimes committed against Yezidis by other citizens." *See Mgoian v. INS,* 184 F.3d 1029, 1036 (9th Cir.1999) (concluding Armenian gov-

ernment was unable or unwilling to control elements of society that targeted the country's religious minorities).

■ Finally, substantial evidence does not support the IJ's determination that Hovsepyan's arrest and beatings in May 1998 were not on account of a protected ground. Again, Hovsepyan credibly testified that the police took action against him and his neighbors not only because of their involvement in the fight, but because they were Yezidi. His belief is further corroborated by circumstantial evidence, as he testified that although there were several people involved in the altercation, the police only arrested and hit the three Yezidis. The Country Conditions Report again corroborates Hovsepyan with reports of arbitrary arrest and beatings during interrogation.

■ In sum, the evidence compels the conclusion that Hovsepyan suffered "on account of" a protected ground and at the hands of the government or a group the Armenian government is unable or unwilling to control. The IJ, however, did not determine whether these events rose to the level of "persecution," [4] and we therefore remand for further proceedings pursuant to *INS v. Orlando Ventura,* 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002).[5] We note that an asylum "applicant may suffer persecution because of the cumulative impact of several incidents even where

---

3. The transcript is not clear, but when Hovsepyan was asked why he believed the government supported the Fenians or would not take action against them, he testified: "Because when we were returning to (indiscernible) they wouldn't do anything about it."

4. The only comment the IJ made on this subject was that the incidents did not rise to the level of *severe* persecution so as to necessitate a grant of asylum without consideration of the likelihood of future persecution. *See Matter of Chen,* 20 I. & N. Dec. 16 (BIA 1989).

5. Because we remand on the asylum claim, we do not reach Hovsepyan's claim for withholding of removal, and we lack jurisdiction to review his appeal from a denial of voluntary departure. *Tovar–Landin v. Ashcroft,* 361 F.3d 1164, 1166 (9th Cir.2004). Hovsepyan's claim that his due process rights were violated when the BIA affirmed the IJ without an opinion is foreclosed by this court's decision in *Falcon Carriche v. Ashcroft,* 350 F.3d 845 (9th Cir.2003).

no single incident would constitute persecution on its own." *Baballah v. Ashcroft,* 367 F.3d 1067, 1076 (9th Cir.2004) (citations omitted).

Finally, we note that Hovsepyan has represented to this court that his wife has been granted asylum in a separate proceeding, which is not part of the administrative record in this appeal. We therefore base no part of our decision on this information; however, on remand, for the sake of uniformity and family unity, the BIA or IJ should consider the circumstances of that grant and whether the cases can or should be consolidated.

**PETITION GRANTED; REMANDED FOR FURTHER PROCEEDINGS.**