**Ambrozie BERES; Viorica Beres, Petitioners,**

v.

**Michael B. MUKASEY, Attorney General, Respondent.**

No. 04–72605.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 2008.

Filed March 26, 2008.

Robert B. Jobe, Esq., Law Office of Robert B. Jobe, San Francisco, CA, for Petitioners.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, OIL, DOJ—U.S. De-

partment of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: D.W. NELSON, KLEINFELD, and HAWKINS, Circuit Judges.

MEMORANDUM *

Ambrozie Beres seeks review of the Board of Immigration Appeals' ("BIA") decision denying his claim for asylum, withholding of removal and protection under the Convention Against Torture ("CAT"). Beres is a native and citizen of Romania, but his family is Hungarian gypsy and speaks the Ceangau language.

The immigration judge ("IJ") found Beres completely credible, but concluded that Beres's experiences in Romania did not rise to the level of persecution and that they were not on account of a protected ground. 8 U.S.C. § 1101(a)(42). We review the IJ's conclusion for substantial evidence, considering the record as a whole. See Surita v. INS, 95 F.3d 814, 819 (9th Cir.1996).

■ Although as a gypsy Beres experienced discrimination and harassment from students, colleagues, and strangers, persecution "does not include mere discrimination, as offensive as it may be." Fisher v. INS, 79 F.3d 955, 962 (9th Cir.1996) (en banc). Similarly, although Beres experienced some difficulty in obtaining employment, he was able to find work (eventually in his field) and thus, at least standing alone, the economic disadvantage he suffered does not rise to the level of persecution. See Nagoulko v. INS, 333 F.3d 1012,

1016 (9th Cir.2003). Nonetheless, these events are factors that may be considered in determining whether the cumulative effect of several forms of harassment constitutes past persecution. See Chand v. INS, 222 F.3d 1066, 1074 (9th Cir.2000).

In addition to the harm and discrimination Beres suffered in society, Beres was physically harmed by Romanian police on at least two occasions. Although an isolated incident of minor physical abuse may not necessarily rise to the level of persecution, See Gu v. Gonzales, 454 F.3d 1014, 1019–21 (9th Cir.2006) (two-hour detention where petitioner was struck on back), Beres described being detained and repeatedly beaten by police on two separate occasions, and was held overnight on the second occasion. See Chand, 222 F.3d at 1075 (recognizing court's "consistent practice of finding persecution where the petitioner was physically harmed"); de Guinac v. INS, 179 F.3d 1156, 1161 (9th Cir.1999) (same).

The IJ also improperly discounted the threatening visits to Beres's home by police, relying on Lim v. INS, 224 F.3d 929 (9th Cir.2000). Unlike Lim, Beres had twice been detained and beaten by Romanian police, one son had been arrested and one son was beaten with a baton. Beres thus had more reason than Lim to believe the police would make good on their threats to "destroy" the Beres family. See Ruano v. Ashcroft, 301 F.3d 1155, 1160 (9th Cir.2002) (distinguishing Lim because petitioner was "closely confronted" and pursued at home and at work). The record as a whole compels the conclusion that Beres was persecuted in Romania. Cf. Chand, 222 F.3d at 1074.

The record also compels the conclusion that Beres's arrests and beatings were at

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

least partially motivated by his ethnicity. *Borja v. INS,* 175 F.3d 732, 735 (9th Cir. 1999) (en banc). At the soccer game, Beres indicated he and his friends were visually singled out by the police, based on their physical (gypsy) appearance. Beres also declared he was suspected of stealing from his work because he was a gypsy, and stated that one officer even said, "Come on over here, you gypsy! You took the metal pieces!"

"[B]ecause it is difficult to conclusively prove motive, [Beres] need only provide some evidence of motive, direct or circumstantial, and demonstrate the connection between the government's actions and [his] membership in a protected group." *Baballah v. Ashcroft,* 367 F.3d 1067, 1077 (9th Cir.2004) (citations, internal quotation marks, and alteration omitted). An applicant's "uncontroverted and credible testimony is sufficient to establish that [he] was persecuted on account of ethnicity." *Shoafera v. INS,* 228 F.3d 1070, 1075 (9th Cir.2000) (petitioner's testimony established rape occurred at least in part on account of a protected ground).

Not only did the IJ find Beres to be completely credible, but Beres also submitted documentary evidence and an expert declaration regarding Romanian attitudes towards gypsies of all ethnic varieties. A state department report indicates that the police are particularly suspicious of gypsies and that they disproportionately detain gypsies pursuant to a law permitting twenty-four hour detention of suspects. *See also Mihalev v. Ashcroft,* 388 F.3d 722, 727–28 (9th Cir.2004) (arrest and beating of gypsies at party was "on account of" gypsy ethnicity).

We therefore remand Beres's claims for asylum and withholding of removal to the BIA for further proceedings.

We also remand Beres's CAT claim for clarification, because the IJ's analysis of the CAT claim appears internally inconsistent. On one page of the decision, the IJ notes that "there is insufficient evidence to show that the respondent had ever been a victim of past torture, *albeit he would be tortured by the Romanian government if he should return to Romania at this time.*" On the next page, however, the IJ denies the application for CAT relief without further discussion. *See Kamalthas v. INS,* 251 F.3d 1279, 1283 (9th Cir.2001) (holding CAT relief is mandatory if it is more likely than not that petitioner would be tortured upon return to his country).

■ We deny Beres's due process claims. Even if the IJ somehow erred by conditioning his son's testimony on waiving the confidentiality of his own asylum application, Beres has not sufficiently established that he was prejudiced from this alleged error. *See Jacinto v. INS,* 208 F.3d 725, 728 (9th Cir.2000). The IJ found Beres credible, and thus any potentially corroborating testimony Marius could have offered is irrelevant. The decision whether to grant or deny a continuance falls within the sound discretion of the trial judge, *Rios–Berrios v. INS,* 776 F.2d 859, 862 (9th Cir.1985), and we cannot say that in this case the IJ abused her discretion by denying an additional continuance for Beres's expert.

**PETITION FOR REVIEW GRANTED IN PART, DENIED IN PART, AND REMANDED.** Petitioners are awarded costs on appeal.