FILED

**NOT FOR PUBLICATION**

MAY 18 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANNA AVANESOVA, | No. 06-70711 |
| Petitioner, | Agency No. A097-119-658 |
| v. | MEMORANDUM[*] |
| ERIC H. HOLDER, Jr., Attorney General, | |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 3, 2010
Pasadena, California

Before: B. FLETCHER and PAEZ, Circuit Judges, and WALTER, Senior District
Judge.[**]

Anna Avanesova, a native and citizen of Georgia, seeks review of a decision

of the Board of Immigration Appeals (BIA) that affirmed an Immigration Judge's

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Donald E. Walter, Senior United States District Judge
for Western Louisiana, sitting by designation.

(IJ's) denial of asylum. Having jurisdiction under 8 U.S.C. § 1252(a), we grant the petition and remand for further proceedings.

Because the BIA's decision adopted and affirmed the IJ's decision while adding its own analysis, we review both decisions. *Mousa v. Mukasey*, 530 F.3d 1025, 1027 (9th Cir. 2008). But where, as here, "the BIA's decision is silent on the issue of credibility, despite an IJ's explicit adverse credibility finding, we may presume that the BIA found the petitioner to be credible . . . ." *Krotova v. Gonzales*, 416 F.3d 1080, 1084 (9th Cir. 2005). We therefore assume petitioner's testimony and application to be truthful and review for substantial evidence the determination that Avanesova had demonstrated neither past persecution nor an independently well-founded fear of future persecution. *Lolong v. Gonzales*, 484 F.3d 1173, 1178 (9th Cir. 2007) (en banc).

I.     **Past Persecution**

As the BIA recognized, the kidnaping and gang rape Avanesova suffered rise to the level of persecution. *See, e.g.*, *Shaofera v. INS*, 228 F.3d 1070, 1074 (9th Cir. 2000). Private persons committed this crime, and according to the BIA and IJ, Avanesova did not demonstrate that the Georgian government was unwilling or unable to control them.

Avanesova failed to report the crime successfully, despite her efforts. That failure, however, is not the end of the inquiry if she "can convincingly establish that doing so would have been futile or have subjected [her] to further abuse." *Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1058 (9th Cir. 2006).

Here, every contact that Avanesova and her mother, Isolda, had with the Georgian government demonstrated its active hostility or passive unwillingness to help. Rather than punishing the boys who had been yelling ethnic slurs and throwing rocks into Avanesova's apartment, the police responded by invading and trashing the apartment while kicking Avanesova and her mother and calling them "[d]irty Abkhazians, dirty Armenians," and saying that "mixtures ha[d] no right to live [in] Georgia." The threats and attacks that Avanesova and Isolda received after Isolda reported corruption in the government (a beating, menacing phone calls, and an interrogation in a college dean's office) could only have come from within the government, and were explicitly motivated by ethnicity. Rather than demonstrating the Georgian government's willingness to punish ethnically motivated crime, the corruption prosecution demonstrates the opposite. The defense attorney accused Isolda of espionage on behalf of Abkhazia, of undermining the Georgian government, and of hiding her ethnic origin. Neither

the prosecutor nor the presiding judge was willing to stop this harassment. The prosecution was then dismissed for "lack of sufficient evidence."

Thus, there is no record evidence that the Georgian government effectually responded to any legal complaint that Avanesova and her mother brought to its attention. Rather, on every occasion it either actively thwarted their legal remedies on account of their ethnicity or consciously refused to stop private persons who discriminated against them. Only conjecture and speculation can support a finding that the government would have effectually responded had Avanesova reported her kidnaping and rape, and "conjecture and speculation can never replace substantial evidence." *Maini v. INS*, 212 F.3d 1167, 1175 (9th Cir. 2000). We therefore grant Avanesova's petition on the issue of past persecution and remand to the agency for further proceedings under a shifted burden of proof. 8 C.F.R. § 208.13(b)(1).

## II.    Well-Founded Fear of Future Persecution

Avanesova contends that there is a pattern or practice of persecution against Armenians in Georgia, but substantial evidence supports the agency's contrary finding. At most the record shows the prevalence of certain kinds of discrimination or disfavor rather than a pattern or practice of persecution. *See Wakkary v. Holder*, 558 F.3d 1049, 1060 (9th Cir. 2009).

4

Nevertheless, neither the BIA nor the IJ engaged in "what has come to be called . . . 'disfavored group' analysis."[1]  *Id.* at 1062.  On remand, the agency should consider in the first instance whether Avanesova is eligible for asylum under the theory that ethnic Armenians are a disfavored group in Georgia.  *See id.* at 1067 (explaining the proper mode of disfavored-group analysis).  We note that the record also contains support for the proposition that Abkhazians and persons who like Avanesova are of mixed ethnicity are disfavored groups.

**PETITION GRANTED; REMANDED.**

---

[1] We have jurisdiction over Avanesova's disfavored-group argument because her pattern-or-practice claim subsumes it.  *See Wakkary*, 558 F.3d at 1064 (explaining that the two theories are different in degree, not in kind); *see also Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 873 (9th Cir. 2008) (the exhaustion requirement applies to claims rather than arguments).