GEORGE, Senior District Judge,
dissenting in part; concurring in part:
I respectfully dissent from the majority’s holding that the evidence compels the conclusion that a central reason for Singh’s persecution was an imputed political opinion. The evidence, both direct and circumstantial, shows that the reason for the police’s arrest and mistreatment of Singh was an effort only to obtain information about Khan, a suspected terrorist. Singh’s own testimony confirmed it. The IJ found that testimony credible, and integrated it *1164 into his ruling that Singh had not demonstrated a nexus between the actions of the police and protected political opinion. The BIA concurred with the IJ’s determination. Now, the majority rejects it all. I cannot agree to pay lip service to the IJ’s credibility determination while at the same time ignoring the record upon which that determination stands.
“To reverse the BIA finding we must find that the evidence not only supports that conclusion, but compels it,” INS v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (emphasis in original), and that “no reasonable fact-finder could fail to find the requisite fear of persecution.” Id. at 483-84, 112 S.Ct. 812. “The applicant must establish his case by ‘credible, direct, and specific evidence’ in the record.” Sangha v. INS, 103 F.3d 1482, 1487 (9th Cir.1997) (citing Pra-sad v. INS, 47 F.3d 336, 338 (9th Cir.1995) (citation omitted)).
The IJ found that Singh testified credibly. “[WJithout an adverse credibility finding we accept a petitioner’s testimony as credible because ‘[a]ny other rule would put us in the position of second-guessing the credibility of the petition on appeal when no doubts have been raised by the Immigration Judge or the Board.’ ” Canjura-Flores v. INS, 784 F.2d 885, 888-89 (9th Cir.1985). We also must consider the record as a whole. Ratnam v. INS, 154 F.3d 990, 994 (9th Cir.1998).
At the removal hearings before the IJ, Singh testified that he “was only arrested because of Jabed Khan and they said he was a terrorist and police alleged that I was helping the terrorists.” During examination, the following exchanges also took place:
[Singh’s lawyer to Singh]:
Q: How were you treated [at the time of the second arrest]?
A: Immediately on arrival at the police station, they took me to the interrogation room and they threw me on the ground and started to beat me up and they were repeating all those four questions all over again. He — they, were asking those questions and I told them that I do not know anything about Jabed Khan and their chief man, he said, beat this, this person again because he’s not telling us the truth or he’s not coming up with — -and then they threatened saying that if you don’t answer or give us the information this time, we will kill you.
Q: Did the police say anything to you besides accusing you of being linked with a terrorist?
A: No, they were — they were focused on asking me about the terrorist and they, they said, how do you help them, tell us all about it. I think because of me being a Sikh, they were, they, were doing that more and more with me.
[Government lawyer to Singh]:
Q: Okay, sir, I just want to make sure I understand, okay. So the reason the police arrested you is because they want to find out information— one is to find out information about Jabed Khan.
A: Yes.
Q: Okay, and [the] second reason was because they accused you of hiring him even though you know that he’s a terrorist?
A: I did not know anything about his being a terrorist and he was not a terrorist.
The IJ found Singh’s testimony credible in the following terms:
*1165 In assessing the credibility of the respondent, I have taken into account the rationality, internal consistency and inherent persuasiveness of his testimony. In considering the foregoing, I find that the respondent has testified credibly and his application is credible.
In concluding that Singh had failed to factually demonstrate the nexus between his mistreatment and a protected ground, the IJ centered exclusively on Singh’s testimony that the police focused on him only because he had hired Jabed Khan and might have information about Khan. He wrote:
[T]he Court noted that [Singh] was asked repeatedly by Government counsel why he was arrested and he consistently answered that he had been arrested because he had employed [Khan].
In the Court’s view, the record is consistent that the police were interested in the respondent because of his connection with an individual from an area of India where there is terrorist activity. The respondent confirmed as much in his testimony....
The IJ’s credibility determination and his protected-ground analysis are thus intertwined. The majority would pull them apart, and draw our attention away from the actual reason upon which the credibility determination is grounded-that Singh did nothing more than employ Khan to provoke the police’s interest. See Mengping Lu v. Mukasey, 275 Fed.Appx. 636, 637 n. 1 (9th Cir.2008) (citing Marcos v. Gonzales, 410 F.3d 1112, 1116 (9th Cir.2005) (“Our review [of an IJ’s adverse credibility determination] focuses only on the actual reasons relied upon by the IJ”)).
Shoafera v. INS, 228 F.3d 1070 (9th Cir.2000), is instructive on the role of un-controverted testimony and the IJ’s credibility determination in establishing the motivation of a persecutor. In that case, Shoafera contended that she was raped by a Tigrean in her Ethiopian community on account of her Amharan ethnicity. Like this case, the IJ had found the alien’s testimony credible yet ruled that the alien’s claims did not meet the requirements of showing that they were based on a protected ground. See id. at 1074-75 n. 3. The Shoafera court granted Shoafera’s petition over the dissent’s argument that the IJ had made a partial adverse credibility determination regarding the ethnic motivation of Shoafera’s attacker when it found that “the respondent’s speculations, however, and they are the Court believes speculations and conclusions, do not prove her claim.” Id. at 1079 (Wallace, J, dissenting). The court reasoned that the IJ had not announced an adverse credibility determination, but instead had merely explained why, despite Shoafera’s credible testimony, she had not established eligibility for asylum. Id. at 1074 n. 3. The Shoafera court also noted that “neither the IJ nor the INS elicited any testimony from Shoafera demonstrating that the nature or basis for her testimony was questionable.” Id. at 1075.
This case presents an even more clear-cut record on the IJ’s credibility determination than Shoafera. The record in this case does not include “speculations and conclusions” which raised the issue of an adverse credibility determination and split the panel in Shoafera. And here, as established by the removal hearing transcript quoted above, both Singh’s counsel and counsel for the government specifically examined Singh on what he was claiming. His uncontroverted answers show that he was persecuted “only” because he had employed Khan and because the police wanted to find out information regarding Khan. For the majority in this case to reach a different conclusion would be to rely on *1166 the same sort of “speculations and conclusions” that the Shoafera court found out-of-place in considering a credibility determination.
Even if we deemed that the factual circumstances upon which the IJ relied for his imputed political opinion finding need not be taken as true, the BIA’s decision still would be supported by substantial evidence. The majority emphasizes the “working against the government” accusation as evidence that the persecution in this case is based on imputed political opinion. However, in the cases cited by the majority, the “against the government” accusations, and similar statements, have been evaluated in the context of the surrounding circumstances upon which the accusation is made, and not just because the phrases were spoken.
In Zhiqiang Hu v. Holder, 652 F.3d 1011 (9th Cir.2011), the Chinese police accused Hu of “gathering a crowd to cause trouble and disturb the order of society,” along with acting against the government. Id. at 1017. In response to the police abuse, Hu told them that he was “merely in favor of ‘the legal rights of those laid off workers,’ ” id., a clearly political motivation. The cases cited by the Zhiqiang Hu court also share a link between the “against the government” accusation and some identified act or conduct which constituted a protected ground. In Yan Xia Zhu v. Mukasey, 537 F.3d 1034, 1045 (9th Cir.2008), the petitioner suffered harm on account of an imputed political opinion, where the Chinese police arrested petitioner and accused her of being “against the government” after she sent a letter to the local town condemning the appointment of her rapist to a position of local political power. And in Baghdasaryan v. Holder, 592 F.3d 1018, 1024-25 (9th Cir.2010), political opinion was imputed to a petitioner where a “top law enforcement official indicated that [the petitioner] was detained and beaten because he was ‘defaming’ and ‘raising his head’ ” against government corruption.
Unlike those cases, there is no reason here to believe that the basis for the accusations made against Singh went beyond what Singh testified to. The one underlying factual circumstance that gave the police their reason to arrest and interrogate Singh, as Singh himself acknowledges, was that he had employed a suspected terrorist. And based on that, the police accused Singh of helping the terrorists, harboring information regarding activities of individuals planning against the government, being a traitor and working against the government. Police at no time accused Singh of being a terrorist himself; at no time during Singh’s torture did they attempt to exact from him a confession to being a terrorist; and at no time did their actions deviate from what was, according to the evidence, an interrogation to gain information about Khan, not one where Singh’s political opinion made him a terrorist suspect.
I do agree with the import of the majority’s opinion, that the only way to find a nexus to imputed political opinion is to characterize Singh as a terrorist. “To establish an imputed political opinion, the applicant must show that his persecutors actually imputed a political opinion to him.” Sangha v. INS, 103 F.3d at 1489 (quoting Arriaga-Barrientos v. INS, 937 F.2d 411, 414 (9th Cir.1991)). Yet, that characterization of the police’s motives for persecuting Singh is based on supposition. In this case, Singh insisted to police that Khan was not a terrorist at all, let alone that he knew that Khan was one. The single fact that Singh hired Khan does not reflect sufficient motive for the conclusion that the government thought that Singh was politically aligned with the terrorists. *1167 This is not a case, like Singh v. Ilchert, 63 F.3d 1501 (9th Cir.1995), superseded by statute on other grounds as stated by Parussimova v. Mukasey, 555 F.3d 734, 739-40 (9th Cir.2009), where the government concedes that police thought that the petitioner was a militant because he had been visited overnight and on six other occasions by a group of known and armed militants. Singh v. Ilchert, at 1503-04, 1509. It is a case of the police taking Singh’s hiring of a suspected terrorist to its logical extension — that Singh would have useful information about that terrorist. That the police crossed all boundaries in pursuing that lead does not change the factor motivating them.
The majority further reasons that the police’s interest in Singh’s relationship to Khan serves as indirect evidence of an imputed political opinion. According to the majority, because the police accused Singh of being a “traitor” based solely on his association with Khan, they imputed a political opinion to him. However, the police’s use of the word “traitor,” according to Singh, was connected to the accusation of working against the government. As with the “working against the government” charge, there is no reason to believe that the “traitor” label applied by police reached beyond the accusations that Singh helped the terrorists, had information regarding their activities, and knowingly employed one. Nor would the police’s use of an epithet, such as calling Singh a “dog,” reveal an imputed political opinion. See Danilova v. Holder, 577 Fed.Appx. 654, 655, 2014 WL 2211724, at *1 (9th Cir. May 29, 2014) (“Substantial evidence also supports the BIA’s conclusion that ethnic slurs used by police while mistreating Danilova did not show that her interracial relationship, rather than investigation of crime, was the reason for the Moldovan authorities’ interest in her”) (citing Parussimova v. Mukasey, 555 F.3d at 741-42).
The majority cites Silaya v. Mukasey, 524 F.3d 1066 (9th Cir.2008), for the conclusion that the police targeted Singh and imputed antigovernment views to him because of his relationship with Khan. In Silaya, the petitioner was kidnapped, tortured and raped by members of a violent antigovernment opposition group who knew who the petitioner was, knew that her father was a veteran who supported the government, and made comments indicating that the petitioner “was chosen as a victim because of her father’s ties to the government.” Id. at 1072. In this case, no such link to the political views of a family member exists. In fact, even if there was evidence that the police were motivated to punish Singh simply because of his association with Khan, “ ‘evidence pointing to another motive,’ [makes] Sila-ya [ ]not on point.” Sharma v. Holder, 633 F.3d 865, 872 (9th Cir.2011) (citing Navas v. INS, 217 F.3d 646, 659 n. 18 (9th Cir.2000)). In Sharma, the court found that “[w]here police beat and threaten the spouse of a known dissident, it is logical, in the absence of evidence pointing to another motive, to conclude that they did so because of the spouse’s presumed guilt by association.” Sharma v. Holder, at 871 (citing Navas, 217 F.3d at 659 n. 18) (emphasis added). Here, there is no absence of evidence that the police arrested and interrogated Singh only in their pursuit of information about Khan. The majority’s hunt for circumstantial evidence to demonstrate otherwise comes up empty-handed.
The majority also concludes that there is little evidence that the police in Singh’s case were engaged in a legitimate investigation. In summing up why he was arrested, Singh testified that he “was only arrested because of Jabed Khan and they said he was a terrorist and police alleged that I was helping the terrorists.” But, that falls short of “showing] that [Singh’s] *1168 persecutors actually imputed a political opinion to him.” See Sangha v. INS, 103 F.3d at 1489. Certainly, the police thought that Singh, whether knowingly or unknowingly, had helped a terrorist by employing Khan for two years. But the evidence is devoid of any interest by the police about Singh’s own political opinions, and the police’s brutality in interrogation does not fill the space in the analysis. The lack of interest by police in Singh’s political opinion is only punctuated by the fact that the police released Singh after each arrest and interrogation upon the payment of a bribe.
Finally, the majority claims that even if a legitimate investigatory reason existed for Singh’s persecution, Singh has presented sufficient evidence to show that imputed political opinion was also a central reason for it. “The task of the alien is simply to demonstrate the reasonableness of a motivation which related to one of the enumerated grounds.” Singh v. Ilchert, 63 F.3d at 1510 (citing Matter of R-, Int. Dec. 3195, 12-13 (BIA 1992) (Dunne, M.M. dissenting in part)); see also Parussimova v. Mukasey, 555 F.3d at 741 (petitioner must “produce evidence from which it is reasonable to believe that the harm was motivated, at least in part, by an actual or implied protected ground”) (citing Borja v. INS, 175 F.3d 732 (9th Cir.1999) (en banc) (first emphasis in original)).
I submit that it is not reasonable to conclude that a central reason for the Indian police’s persecution of Singh was based on imputed political opinion. Singh confirmed in his testimony that the only reason for his arrests and interrogations was to gain information about Khan and what Singh had done to help terrorist groups. The police never accused Singh of being a terrorist, and never asked him to confess that he was. The police never accused Singh of being a terrorist to anyone else, including his wife, even though after Singh fled to the United States, the police went to Singh’s house numerous times and arrested his wife to try to locate Singh. And, had the police believed Singh to be a terrorist or hold political opinions aligning himself with the terrorists, one would not expect the police to release him on two separate occasions after torture did not extract the information about Khan that they were seeking.
Whether or not we respect the IJ’s credibility determination, the BIA had ample reason to believe that Singh did not meet his burden of proof. Certainly, it was not compelled to do so. I would, therefore, deny the petition for review and application for withholding of removal.
I concur with the opinion insofar as it remands for the granting of relief pursuant to the Convention Against Torture.