**Sereja YAZITCHIAN; Lena Melkoumian, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 98–70752.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 2000

Decided April 3, 2000

---

9. As aptly stated by Justice Frankfurter, "[t]his is a court of review, not a tribunal unbounded by rules. We do not sit like a kadi under a tree dispensing justice according to considerations of individual expediency." *Terminiello v. City of Chicago,* 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949) (Frankfurter, J., dissenting).

1166

Joseph J. Rose, Rose, Rose & Davis, Los Angeles, California, for the petitioners.

Marshall Tamor Golding, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent.

Before: WALLACE, PREGERSON and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

This petition for review presents the question, *inter alia*, of whether *Desir v. Ilchert*, 840 F.2d 723 (9th Cir.1988) was overruled *sub silentio* by *INS v. Elias–Zacarias*, 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). We conclude it was not and grant the petition for review from the decision of the Board of Immigration Appeals ("BIA") affirming the denial of asylum.

I

Armenian refugee Sereja Yazitchian and his wife Lena Melkoumian ("Yazitchians") would probably dispute the notion that there is no such thing as bad publicity. In 1992, a local television station broadcast a request for photographs of national soldiers and war heros from the Russian–Turkish conflict at the beginning of the twentieth century. Yazitchian's father and father-in-law had been members of the Armenian Revolutionary Federation, or Dashnaktsutyun party ("Dashnak"), and had fought under a famous commander in the Russian–Turkish conflict. Both had been killed in 1937 by the Stalinists. Yazitchian and his wife were interviewed when presenting the photographs at the television station. Immediately afterwards, the Yazitchians became involved in a heated argument with a man who observed the interviews and threatened them for being Dashnak supporters. The Dashnaks are

still a political force in Armenia in opposition to the present government. The State Department has recognized that Dashnaks suffer political persecution, primarily focused on high ranking party officials and other activists. *See Department of State Profile of Asylum Claims and Country Conditions: Armenia* 7–8 (1996).

Yazitchian had worked as a crane operator until his retirement in 1987, when he opened a leather goods store with his son which was making a healthy profit. The Yazitchians profess no political views and had enjoyed a life of relative calm. That changed with the television interview.

Shortly after the broadcast, a government representative from the "Fend Department" came to investigate the business. During the investigation the Fend representative referenced the fact that Yazitchian was a Dashnak[1] and then forced Yazitchian to permit a Fend representative to work with him in the business. Because Yazitchian traveled to Russia to obtain leather for his business, the Fend people accused him of importing weapons from Russia and giving them to the Dashnak. The Fend representative skimmed all of the profits from the business and both Yazitchian and his son were ultimately forced to leave the business altogether. The government confiscated all of the machinery and equipment. When they complained to the government, the Yazitchians were told that they should go away because they had been using their business to provide weaponry to the Dashnaks.

The repercussions did not end there. Yazitchian was chased by a car and beaten. During the beatings the assailants referred to him as "Dashnak." The beatings were so severe that Yazitchian required medical attention. The Yazitchians received repeated threatening calls calling them "the children of Teshna" and stating

that they had "no right to be able to work" in Armenia and that they should go away or else they would be killed. Yazitchian was instructed by the government to turn in his passport, then denied coupons to purchase food items from the government because he did not have his passport.

One of the Yazitchian children lives in the United States and is taking care of the petitioners, whose health has failed since emigrating. The remaining children, including the son who helped Yazitchian run the business, have been forced to flee Armenia and are now believed to be somewhere in Russia. Yazitchian testified that he would be killed or put in prison if returned to Armenia. At the present time Mr. Yazitchian is about 68 years old and his wife is 66.

The immigration judge found the Yazitchians to be credible witnesses. Despite this determination, he ruled that they were not eligible for asylum because they were not persecuted on any statutorily protected basis. The BIA affirmed the immigration judge's decision and commented that the problems the Yazitchians suffered "appear to have been personal in nature rather than 'on account of' a qualifying ground."

## II

▮ To establish eligibility for asylum, an alien must show that he or she is a refugee within the meaning of 8 U.S.C. § 1101(a)(42)(A). *See Singh v. Ilchert,* 63 F.3d 1501, 1505 (9th Cir.1995).[2] To establish refugee status, the Yazitchians must show that they experienced either past persecution or that they have a well founded fear of persecution, on account of their race, religion, nationality, membership in a

---

1. Throughout the Administrative Record the term "Teshna" is used. This is apparently a phonetic spelling of how the word "Dashnak" was pronounced by Yazitchian and his wife.

2. The Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA")

does not apply in this case because that act does not apply to petitioners whose deportation proceedings commenced before April 1, 1997. The first deportation hearing in this case was on April 16, 1996.

particular social group, or political opinion. *See id.*

One who establishes eligibility for asylum, in essence one who is a refugee, is still subject to deportation. To qualify for withholding of deportation, an applicant must demonstrate a "clear probability of persecution", meaning that "it is more likely than not" that the alien will be persecuted upon deportation. *Acewicz v. INS*, 984 F.2d 1056, 1062 (9th Cir.1993). This is a more stringent standard of proof than is required to show that a well founded fear of persecution exists for asylum purposes. *See id.* However, where an alien establishes past persecution he is entitled to a presumption of a well founded fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1). We review the BIA's factual determinations under the deferential "substantial evidence" standard and uphold them unless the evidence compels a contrary conclusion. *See Andriasian v. INS*, 180 F.3d 1033, 1040 (9th Cir.1999). This means that the BIA's determination that an alien is not eligible for asylum must be upheld if supported by reasonable, substantial, and probative evidence in the record; reversal should only occur where the evidence is such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed. *See Elias–Zacarias*, 502 U.S. at 481, 112 S.Ct. 812.

Because the immigration judge found the Yazitchians' testimony credible, and the BIA did not make a contrary finding, we must accept as undisputed the facts as petitioners testified to them. *See Singh v. Ilchert*, 63 F.3d 1501, 1506 (9th Cir.1995); *see also Duarte de Guinac v. INS*, 179 F.3d 1156, 1159 n. 4 (9th Cir. 1999).

Substantial evidence does not support the BIA's conclusion that the persecution the Yazitchians suffered was personal. The BIA conceded that Yazitchian was a "victim of some form of extortion." Extortion demanded or extracted by the government, in part because of the petitioner's political opinion, can constitute persecution on the basis of a statutorily protected ground. *See Desir*, 840 F.2d at 727. Here, petitioner testified that the extortion came at the instance of a governmental entity and provided circumstantial evidence that the extortion was on account of a political opinion imputed to Yazitchian. Indeed, there is no evidence in the record as to the specific facts at issue to support a contrary conclusion.

The INS suggests that the State Department Country Report refutes Yazitchian's factual claims. However, the Country Report at issue in fact describes political persecution of the Dashnaks, primarily focused on high ranking party officials and other activists. *See Department of State Profile of Asylum Claims and Country Conditions: Armenia* 7–8 (1996). Immigration decisions require an "individualized analysis" of country conditions. *See Duarte de Guinac v. INS*, 179 F.3d 1156, 1163 (9th Cir.1999). None of the country conditions reported by the State Department preclude the conclusion that the Yazitchians could have been persecuted, especially given that their claim was that the political opinion of a prominent Dashnak political leader was imputed to them.

At oral argument, the INS also argued that *Desir* was overruled by *INS v. Elias–Zacarias*, 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). However, *Elias–Zacarias* did not preclude claims where persecution took the form of extortion based on imputed political opinion: it merely required "direct or circumstantial" evidence of a motive founded on one of the statutorily-prohibited grounds. *Id.* at 483, 112 S.Ct. 812. The record in this case contains such evidence. Thus, the BIA's argument is unavailing.

In short, the Yazitchians established past persecution under 8 C.F.R. § 208.13(b)(1). Because they have established past persecution, the Yazitchians are entitled to a presumption of a well-founded fear of future persecution. *Id.*;

*see also Borja v. INS,* 175 F.3d 732, 737–38 (9th Cir.1999). Because of this presumption, the Yazitchians have met their burden of proof as to their eligibility for withholding of deportation. *See Acewicz v. INS,* 984 F.2d 1056, 1062 (9th Cir.1993).

█ The presumption of a well-founded fear of persecution can be rebutted by the INS by showing that conditions in Armenia have changed to such an extent that the Yazitchians should no longer fear persecution. *See* 8 C.F.R. § 208.13(b)(1)(i). However, where the country conditions evidence supports rather than controverts the petitioner, such evidence cannot serve to rebut the presumption. *See Duarte de Guinac,* 179 F.3d at 1164. As was the case in *Duarte de Guinac,* the country conditions report actually supports petitioners' claims and deportation must therefore be withheld.

PETITION FOR REVIEW GRANTED