**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SOMBATH KIN; BUNNARY PRAK,
            *Petitioners,*

v.

ERIC H. HOLDER JR., Attorney
General,
            *Respondent.*

No. 05-73079

Agency Nos.
A078-112-730
A095-302-631

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 8, 2009—Pasadena, California

Filed February 18, 2010

Before: Andrew J. Kleinfeld and Richard C. Tallman,
Circuit Judges, and David M. Lawson,* District Judge.

Opinion by Judge Tallman

---

*The Honorable David M. Lawson, United States District Judge for the
Eastern District of Michigan, sitting by designation.

2589

## COUNSEL

Aris E. Karakalos (argued), Lascher & Lascher, Ventura, California; Kathryn M. Davis, Law Office of Kathryn M. Davis, Pasadena, California, for petitioners Sombath Kin and Bunnary Prak.

Margaret K. Taylor (argued), Office of Immigration Litigation, Washington, D.C.; Jeffrey S. Bucholtz, Acting Assistant

Attorney General, Civil Division; Ernesto H. Molina, Senior Litigation Counsel, for respondent Attorney General Holder.

## OPINION

TALLMAN, Circuit Judge:

Bunnary Prak ("Prak") and Sombath Kin ("Kin") (collectively "Petitioners") are natives and citizens of the Kingdom of Cambodia. They petition for review of the Board of Immigration Appeals' ("BIA") final order affirming the Immigration Judge's ("IJ") adverse credibility finding as to each of them and denying their appeal. As a result of the unfavorable credibility determination, the IJ found Petitioners ineligible for asylum, withholding of removal, and relief under the United Nations Convention Against Torture. The BIA affirmed the IJ's adverse credibility finding against each Petitioner in separate opinions. Because the BIA's adverse credibility findings are supported by substantial evidence, and therefore Petitioners fail to carry their burden of showing entitlement to relief, we deny the consolidated petition for review.

I

Kin and Prak, husband and wife, entered the United States on June 28, 2001, and March 29, 2002, respectively, without valid immigrant visas, reentry permits, border crossing cards, or other entry documents required by the Immigration and Nationality Act. The government issued Notices to Appear on July 3, 2002, their cases were consolidated for the merits hearing, and Petitioners conceded the charge of removability. Petitioners claim persecution based on political opinion and membership in a particular social group.

Both Prak and Kin testified that they are members of the Sam Rainsy Party ("SRP"). Prak testified that she has been a

member of the SRP since 1995 or 1996 and that she has given the party between four and five thousand dollars. She attended a demonstration in 1998 in which SRP members protested the outcome of a recent Cambodian election. Her participation in the demonstration consisted of taking food and drink to the protestors each day of the demonstration.

Prak claimed she was arrested in the Mean Chey District of Phnom Penh by five government officers on October 31, 1998. She described how she was forced into a vehicle and initially taken to a prison facility called "January 7th" and was interrogated about her participation in the demonstration. Prak testified that she was slapped, kicked, hit with electrical batons, and suffocated. Her skull was fractured. She testified that she was transferred to another prison, T-3, on November 11, 1998, and was soon visited by human rights workers who helped her get medical treatment and took pictures of her wounds. Prak stated that she appeared in court once, but was sent back to prison until her release on November 17, 1999. The prison release order Prak offered in evidence listed her birthday as being in the year 1962, which is incorrect, and Prak testified that she did not know why her birth year was wrong on the prison release form.

Prak stated that the human rights personnel kept her in a safe place for a week after her release, but she eventually moved back to her house until January 2001. After hearing that she was still wanted by the authorities, Prak moved with her children to the home of a Cambodian official, His Excellency Ouk Moeurn. Prak and her children changed their names and Prak did not work.

Prak testified that she applied for a visa at the U.S. Embassy in December 2000, but her application was denied. Prak claims that in June 2001, Ouk Moeurn helped her escape to the United States by stating she was his wife, and providing her with a tourist visa bearing the name Heang Kimheng. She testified that if she had not done this, she would not have been

able to escape. She stated that she is afraid that she will be arrested or killed if she is forced to return to Cambodia.

Kin testified that his birth name is Roth Pon, even though his birth certificate lists his birth name as Sombath Kin. He then stated that he changed his name to Kin when he started working as a reporter. Kin also testified that he worked for the Proleant Cheat newspaper from January 1985 to November 1998. He also stated that he worked for the United Nations Transitional Authority. Kin testified that he has been a member of the SRP since 1995 and that he wrote reports in an effort to "ameliorate the party." Kin said he participated in the 1998 demonstration by reporting the events and acting as a "propagandist." He testified that his articles were published in the Proleant three times per week and he spoke at the demonstration three times per day. He claimed the government's military force finally dispersed the demonstrating crowd by throwing grenades into the demonstration and firing rounds either into the air or straight at participants.

Kin stated that he was arrested on November 10, 1998, in the Kompong Thoum Province. Kin stated that he believed his wife was at home at the time he was arrested. He was taken to a police station for 12-13 hours and was eventually told that he was arrested for his participation in the demonstration. He was interrogated and hit with the butt of a gun, a plastic baton, and an electrical stick. Kin states that he was then sent to Phnom Penh City and placed in prison for three months where he was tortured weekly and not allowed to communicate with anyone. Kin was eventually moved to T-3, where he stayed for thirteen months.

After two unsuccessful attempts to obtain release from the courts in May and August of 1999, Kin was conditionally released by the Supreme Court of Cambodia in December 1999. His release was conditioned on him revoking a report written against the government. After his release, Kin hid from officials and received help from a Cambodian senator,

His Excellency Sitha Thach, to escape to the United States. Kin entered the United States under the name Vannarath Heang. He stated that he could not use his real name because he was under investigation and would not have been allowed to leave Cambodia.

Senator Thach testified for Petitioners at the hearing before the IJ. At the time of the hearing, Senator Thach told the court he was a senator representing the SRP in the Kingdom of Cambodia and had served in that position since March 1999. Senator Thach testified that he has known Kin since 1996 or 1997 when they were both working for local newspapers.

Senator Thach claimed that he was one of the founding members of the SRP, and that both Prak and Kin are also members. Additionally, Senator Thach testified that members of the SRP received threats, went missing, or were killed during the period leading up to the 1998 election. He also said that in 1998 he led a post-election protest in which both Petitioners participated. Senator Thach testified that he asked the United Nations Human Rights Organization to assist Petitioners after he learned of their arrests. He believed Petitioners were arrested as a result of their participation in the demonstration.

Senator Thach stated that he knew Prak stayed with His Excellency Ouk Meourn when she was released from prison. Senator Thach also testified that he introduced Kin to people who could help him escape to the United States. When asked about whether he helped Kin or Prak get released from prison, Senator Thach stated that he wanted the human rights agency to speak for them (Prak and Kin), but that he never personally petitioned any Cambodian court on their behalf.

The IJ received testimony on behalf of Prak and Kin in a consolidated hearing. The IJ denied relief based on a finding of adverse credibility against both Petitioners. The IJ listed several reasons for these adverse findings: (1) Petitioners'

demeanor; (2) Prak's possession of two passports bearing different names and birth dates that also conflicted with her prison release order; (3) inconsistency between Petitioners' testimony and a letter written by Senator Thach; (4) Petitioners' failure to mention the 1998 demonstration in either of their petitions for asylum with no credible explanation as to why it was omitted; (5) Prak's lack of proof of her party membership; (6) Kin's use of a false name, date of birth, and visa to enter the United States and obtain a visa extension; (7) a letter from the United Nations and a United Nations photo identification of Kin that appear to have been altered; (8) inconsistency in the testimony regarding Prak's location at the time of Kin's arrest; and (9) inconsistency between sworn statements in Petitioners' asylum applications and the testimony of Senator Thach.

The BIA dismissed Petitioners' appeals by issuing a one-page per curiam order for each. The BIA found that the IJ's adverse credibility determination was based on Petitioners' demeanor and material inconsistencies between each Petitioner's testimony, Senator Thach's testimony, and the documentary evidence. The BIA highlighted Petitioners' failures to mention their participation in the 1998 demonstration in their applications for asylum, their testimonial inconsistency regarding where Prak was on the day Kin was arrested, and the inconsistency regarding whether Senator Thach petitioned Cambodian courts for either Petitioner's release. Petitioners filed their Petition for Review within the 30-day time limit, giving us jurisdiction under 8 U.S.C. § 1252.

II

A

If the BIA conducts its own de novo review and does not adopt the IJ's decision as its own, we review the BIA's decision. *Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004). We review an adverse credibility finding for substantial evi-

dence. *Singh v. Ashcroft*, 362 F.3d 1164, 1168 (9th Cir. 2004). We reverse the BIA's decision only if the petitioner's evidence was "so compelling that no reasonable factfinder could find that he was not credible." *Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003) (internal quotation omitted). Our review will require reference to the IJ's decision because the BIA's decision in this case accorded significant deference to the IJ's observations. *See Avetova-Elisseva v. INS*, 213 F.3d 1192, 1197 (9th Cir. 2002).

The substantial evidence standard is deferential, but the BIA must highlight specific and cogent reasons to support an adverse credibility finding. *Alvarez-Santos v. INS*, 332 F.3d 1245, 1254 (9th Cir. 2003). Additionally, any reason given by the BIA in support of its determination must be "substantial and bear a legitimate nexus to the finding." *Salaam v. INS*, 229 F.3d 1234, 1238 (9th Cir. 2000) (internal quotation omitted). Any inconsistencies relied upon by the BIA must go to the heart of the asylum claim to support an adverse credibility finding. *Alvarez-Santos*, 332 F.3d at 1254.[1] If the BIA relies on inconsistencies, it must explain the significance of the discrepancy or comment on the petitioner's evasiveness when asked about it. *Bandari v. INS*, 227 F.3d 1160, 1166 (9th Cir. 2000).

Our review focuses solely on the actual reasons relied upon for the adverse credibility determination. *Marcos v. Gonzales*, 410 F.3d 1112, 1116 (9th Cir. 2005). However, as long as one of the identified grounds underlying the credibility finding is supported by substantial evidence and goes to the heart of the Petitioners' claims, we are bound to accept the adverse credi-

---

[1] The REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, amended the Immigration and Nationality Act § 242, 8 U.S.C. § 1158. For applications filed after 2005, the finder of fact does not have to consider whether an inconsistency goes to the heart of the applicant's claim. 8 U.S.C. § 1158(b)(1)(B)(iii); *see also Jibril v. Gonzales*, 423 F.3d 1129, 1138 n.1 (9th Cir. 2005). This case is not governed by the 2005 law change because Petitioners filed their asylum applications in 2002.

bility findings. *Li v. Ashcroft*, 378 F.3d 959, 962 (9th Cir. 2004).

B

The government argues that we lack jurisdiction over the Petition for Review because Petitioners failed to exhaust their administrative remedies before the BIA. The government maintains that Petitioners did not mention the IJ's adverse credibility finding in either their Notices of Appeal or their joint brief to the BIA. According to the government, Petitioners' complete failure to mention the IJ's adverse credibility findings distinguishes this case from *Abebe v. Gonzales*, 432 F.3d 1037, 1040 (9th Cir. 2005) (en banc),[2] where we found that even scant reference to an argument for asylum put the BIA on notice and constituted exhaustion.

**[1]** The en banc panel in *Abebe* recognized that the BIA could have refused to consider the asylum argument due to a procedural defect. *Id.* at 1041. However, since the BIA elected to ignore the procedural defect and consider the argument on its substantive merits, the reviewing court could not then decline to consider the issue. *Id.* The same is true here. Although Petitioners did not state that they were appealing the IJ's adverse credibility determination, that was precisely the issue reviewed by the BIA. Thus, the policy concerns underlying the requirement of allowing an agency full opportunity to resolve a controversy or correct its errors before judicial intervention have been fulfilled. *See id.* We conclude that we can properly exercise jurisdiction over the Petition for Review.

---

[2]Please note that this case is different from *Abebe v. Gonzales*, 493 F.3d 1092 (9th Cir. 2007) (en banc).

## III

### A

**[2]** Petitioners argue that the adverse credibility determination based on their demeanor is not supported by substantial evidence. The BIA deferred to the demeanor findings made by the IJ because the IJ was "uniquely positioned to make such assessments." Because the BIA deferred to the IJ's demeanor determination, we therefore "look to the IJ's . . . decision as a guide to what lay behind the BIA's conclusion." *Tekle v. Mukasey*, 533 F.3d 1044, 1051 (9th Cir. 2008) (internal quotation omitted). The IJ stated that her adverse credibility findings were "not based solely on the examination of the spoken word when compared to the written word, but also based upon the [Petitioners'] demeanor as witnesses." This is the only reference the IJ made to Petitioners' demeanor. Although an IJ's determination regarding demeanor is given special deference, the IJ must still provide specific examples of a petitioner's demeanor that would support this basis for an adverse credibility determination. *See Arulampalam v. Ashcroft*, 353 F.3d 679, 686 (9th Cir. 2003) (refusing to give deference to the IJ's demeanor finding because the IJ did not "specifically or cogently refer to any aspect" of the petitioner's demeanor).

**[3]** The IJ's failure to provide specific examples explaining why Petitioners' demeanor called their testimony into question compels the conclusion that the BIA's adverse credibility finding cannot be upheld on this basis. It would be unreasonable to affirm the BIA's findings based on the IJ's blanket statement about Petitioners' demeanor when the hearing transcript did not provide evidence regarding their non-verbal communication and the IJ did not make explicit reference to particular unrecorded aspects of demeanor in her oral decision. *See id.* There is no evidence in the administrative record that would support an adverse credibility determination based on demeanor.

## B

**[4]** The IJ and BIA explicitly relied upon both Prak's and Kin's failure to even mention the 1998 political demonstration in their separate asylum applications as a basis for the adverse credibility findings. Petitioners contend that this omission is an impermissible reason to make an adverse credibility determination. *See Alvarez-Santos*, 332 F.3d at 1254 (recognizing that omissions from asylum applications are generally not a sufficient basis for discrediting testimony). Omissions are not given much significance because applicants usually do not speak English and are not represented by counsel. *Id.* Similarly, applicants frequently have someone prepare the application for them, and applicants may be compelled to explain facts included in the application by an unscrupulous preparer. *Id.* However, we find this particular omission significant.

Petitioners compare their case to *Smolniakova v. Gonzales*, 422 F.3d 1037, 1045 (9th Cir. 2005), where we reversed the adverse credibility finding because we found that the petitioner's failure to mention that her wrists were slashed was not a discrepancy supporting an adverse credibility determination because the wrist-slashing was simply a description of the mistreatment that was alleged in her asylum application. The government, on the other hand, likens this case to *Alvarez-Santos*, 332 F.3d at 1254, where we upheld the adverse credibility finding because the petitioner did not mention the incident in any asylum application or his original testimony. Rather, the petitioner only remembered the "dramatic incident" after the conclusion of his testimony. *Id.*

**[5]** In order to avoid removal, an alien seeking asylum bears the burden of establishing that he is being persecuted based on his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Prak and Kin sought asylum based on their political opinion, yet neglected to mention their participation in the key political demonstration they later claimed was the

basis for their arrests and subsequent persecution. This is not a situation where Petitioners failed to "remember non-material, trivial details that were only incidentally related to [their] claim of persecution." *Kaur v. Gonzales*, 418 F.3d 1061, 1064 (9th Cir. 2005). Rather, Petitioners omitted any mention of their participation in a demonstration that is the entire basis for their claim for political asylum. When confronted with the omission at the asylum hearing, Kin stated that he felt inclusion in the asylum applications was not necessary because the demonstration would be discussed at the hearing. This explanation is not persuasive enough to compel the conclusion that the omissions were immaterial.

**[6]** Petitioners' omissions in this case are similar to the omission in *Alvarez-Santos*. The 1998 political demonstration and Petitioners' participation in it were crucial to establishing they were persecuted for their political opinion, yet no mention was made of the demonstration until the merits hearing on the applications. These omissions constitute substantial evidence to support the BIA's adverse credibility determinations.

## C

Petitioners argue that the BIA's adverse credibility determinations are not supported by substantial evidence because the BIA should not have relied on inconsistencies between Kin's testimony and Senator Thach's testimony when it made an adverse credibility finding against Prak. We believe that substantial evidence does support the BIA's adverse credibility determinations because it is the BIA's duty to consider all evidence presented to it when making such findings.

**[7]** The asylum merits hearing before an IJ or the BIA provides the alien an opportunity to present testimony, documentary evidence, and arguments in support of his claim for asylum. Aliens are afforded the opportunity to explain inconsistencies within their own personal testimony because the

true story may get lost in translation. *See Tekle*, 533 F.3d at 1053 (finding legal error in not affording the alien an opportunity to explain the purported inconsistency because the alien may have been able to clarify her original answer); *Zi Lin Chen v. Ashcroft*, 362 F.3d 611, 618 (9th Cir. 2004) (stating that the IJ's failure to question the alien further resulted in the court speculating whether the alien did not understand the question and whether there was a truthful explanation for the inconsistency).

**[8]** When inconsistencies exist between the testimony of multiple witnesses and documentary evidence, however, it is not a matter of a communication problem requiring clarification, but of determining how the evidence fits together. Hence, it is not improper for the BIA to consider such inconsistencies when making credibility determinations. An asylum merits hearing is no different than any other trial or hearing in which the factfinder must resolve conflicts in the testimony. For example, when the prosecution in a criminal case puts on evidence that supports one version of events and the defendant then testifies that the events occurred differently, the prosecution is not given an opportunity to explain why the defendant's testimony is different. Instead, the finder of fact shoulders the responsibility of examining all the evidence presented and deciding which version of the events is true. In an immigration hearing, it is the adjudicator's duty to hear all the evidence presented, consider it, and make that determination. Thus, it is proper for the IJ or the BIA to consider all the evidence presented at the hearing before making an adverse credibility determination.

**[9]** Our prior immigration decisions support this conclusion because they recognize that any reviewing body, be it the BIA or the Ninth Circuit, must examine all of the evidence presented at the hearing. *See Kaur*, 418 F.3d at 1066 ("In short, our case law does not mandate that we, or the IJ for that matter, abandon our common sense in favor of rules of general application. It is well established in this circuit that false

statements and other inconsistencies must be viewed in light of all the evidence presented in the case."); *see also Kaur v. Ashcroft*, 379 F.3d 876, 889 (9th Cir. 2004) ("[M]is-representations must instead be evaluated in light of all the circumstances of the case . . . ."). When multiple witnesses testify, the testimony of each must be considered, and the adjudicator then must evaluate the conflicting and corroborating testimony to determine the relevant facts and make a decision on the merits of the alien's application. Consequently, the BIA must be allowed to consider the effect of every witness's testimony on the claims made by each applicant currently before the BIA.

**[10]** Here, the IJ made an adverse credibility determination as to both Prak and Kin in part because there were numerous inconsistencies among their testimony, with the testimony of Senator Thach, and with the documentary evidence submitted by Petitioners. In reviewing the IJ's determination, the BIA specifically noted two inconsistencies: (1) Kin's testimony that Prak was at home when he was arrested and Prak's testimony that she had already been arrested at that time, meaning she would have been in prison when Kin was arrested; and (2) Senator Thach's testimony that he never petitioned a Cambodian court for either Petitioner's release and Kin's written declaration that Senator Thach filed a complaint with the Supreme Court of Cambodia for Kin's release. It was proper for the BIA to consider these inconsistencies when making a credibility determination as to both Kin and Prak.

**[11]** These two specific findings constitute substantial evidence in support of the BIA's adverse credibility determinations. The inconsistencies went to the truthfulness of the circumstances surrounding Petitioners' arrests and the intervention needed to obtain their releases from prison. Thus, these inconsistencies go to the heart of each Petitioner's claim for asylum. *See Singh v. Gonzales*, 439 F.3d 1100, 1108 (9th Cir. 2006) ("An inconsistency goes to the heart of a claim if

it concerns events central to petitioner's version of why he was persecuted and fled.").

## IV

We hold that the BIA's reasons for finding Prak and Kin not credible on consolidated evidence are supported by substantial evidence as to each Petitioner. Therefore they cannot satisfy their burden of showing entitlement to the relief they sought.

**Petition for review DENIED**.