**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| AJIT SINGH,<br><br>               Petitioner,<br><br>  v.<br><br>ERIC H. HOLDER, Jr., United States<br>Attorney General,<br><br>               Respondent. | No. 09-73276<br><br>Agency No. A072-174-109<br><br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 4, 2010
Seattle, Washington

Before: B. FLETCHER and BYBEE, Circuit Judges, and WILKEN, District
Judge.[**]

Petitioner Ajit Singh appeals the decision of the Board of Immigration

Appeals (BIA) affirming an Immigration Judge's (IJ) denial of his claims for

asylum, withholding of removal and relief under the Convention Against Torture

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**] The Honorable Claudia Wilken, United States District Judge for the
Northern District of California, sitting by designation.

(CAT). We have jurisdiction under 8 U.S.C. § 1252. We grant in part the petition for review, deny it in part and remand for further proceedings.

The BIA's determination that an alien is not eligible for asylum must be upheld if supported by reasonable, substantial and probative evidence in the record; reversal should occur only where the evidence is such that a reasonable fact finder would have to conclude that the requisite fear of persecution existed. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); Yazitchian v. INS, 207 F.3d 1164, 1168 (9th Cir. 2000). Administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. 8 U.S.C. § 1252(b)(4)(B). Credibility determinations are also reviewed for substantial evidence and, thus, must be upheld unless the evidence presented would compel a reasonable fact finder to reach a contrary result. de Leon-Barrios v. INS, 116 F.3d 391, 393 (9th Cir. 1997). An adverse credibility determination must be supported by "specific and cogent reasons." Kin v. Holder, 595 F.3d 1050, 1055 (9th Cir. 2010). In pre-REAL ID Act cases, such as this one, the inconsistencies supporting an adverse credibility finding must "go to the heart" of a petitioner's claim. Id.

"Where the BIA reviews the IJ's decision de novo, our review is limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted."

Cordon-Garcia v. INS, 204 F.3d 985, 990 (9th Cir. 2000); see also Hosseini v. Gonzales, 471 F.3d 953, 957 (9th Cir. 2006).

Petitioner testified that he was persecuted in India based on his membership in the Akali Dal (Mann) political party.  Petitioner claimed that his brother, Geswinder Singh, was also a member of the party and was arrested during a January 1994 police raid of the offices of Today's Voice, the newspaper at which Geswinder worked.  Petitioner stated that Geswinder was never released and that he was not aware whether or not Geswinder was still alive.

In response to Petitioner's testimony, the Department of Homeland Security (DHS) proffered a United Nations (U.N.) report, which stated,

> The following staff members of the Punjab daily Aj Dj Awaz
> (Today's Voice) were reportedly arrested on 11 January 1994
> following a police raid on the premises of the newspaper: Gurdeep
> Singh, Malkir Singh, Jasbir Singh Khalsa, Jasbir Singh Manowan,
> Debvinder Singh, Amrik Singh, Ajab Singh and Kuldeep Singh.

 After the list of names was read at the hearing, the following cross-examination of Petitioner ensued:

Q:     Did you hear your brother's name?

A:     Yes.

Q:     Which name was your brother's name?

A:     Javinder (phonetic sp.)

Q:      Sir, I didn't read the name Javinder.

A:      No, no, no, no, no.  Geswinder Singh.

Q:      Sir, there is no Geswinder Singh on this list.  That's why I asked you if your brother used any other name.

A:      I don't know whether he used another name or not.

Q:      Sir, if your brother used another name don't you think you'd know?

A:      Sometimes the brother does not tell me everything.

The IJ concluded that Petitioner was not credible based on two grounds: (1) the absence of Geswinder's name in the U.N. report and (2) inconsistencies regarding Petitioner's contact with his family in India.  Notably, the IJ did not disbelieve Petitioner's testimony about his detention and beating.  In affirming the IJ's adverse credibility finding, the BIA relied solely on the U.N. report.  We do not find this reason cogent or sufficient to support a finding that Petitioner was not credible.

It is not clear that Petitioner's brother's name was not in the report.  When the list was read, Petitioner believed that he had heard his brother's name, apparently understanding "Debvinder" to be the same as "Geswinder" or "Javinder."  Given potential variations in the English spelling of Punjabi names, Petitioner was not necessarily incorrect.  Kaur v. Ashcroft, 379 F.3d 876, 886-87

(9th Cir. 2004) (discussing, with approval, petitioner's argument that a "phonetic transliteration" of a Punjabi name "has many spellings in English, each of which are interchangeably acceptable as the same word or name"), superseded by statute on other grounds, REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, as recognized in Singh v. Holder, 602 F.3d 982, 986 (9th Cir. 2010). However, the IJ did not inquire into Petitioner's assertion that his brother's name was on the list, which itself undermines the adverse credibility finding. See Kaur, 379 F.3d at 887 ("An adverse credibility finding is improper when an IJ fails to address a petitioner's explanation for a discrepancy or inconsistency."). Further, the U.N. report could have been inaccurate and incomplete, and Petitioner would have been hard-pressed to prove, more than thirteen years after the raid, that his brother had been arrested. Indeed, the U.N. report did not indicate the source of the names or offer any indication as to the list's accuracy. Even if Geswinder was not arrested in the raid, Petitioner could have been telling the truth when he said he believed that his brother was. Nothing contradicts Petitioner's testimony about his own detention and beating. Thus, the U.N. report is not necessarily inconsistent with Petitioner's testimony. Because the U.N. report does not contradict Petitioner's testimony, it cannot support the BIA's adverse credibility finding. Singh v. Ashcroft, 301 F.3d 1109, 1112 (9th Cir. 2002). Without a viable reason to support

the BIA's adverse credibility determination, we must accept Petitioner's testimony as credible. Kaur, 379 F.3d at 890.

Neither the BIA nor the IJ made an explicit finding that, if true, Petitioner's testimony established past persecution sufficient to support a claim for asylum. Instead, both the BIA and the IJ assumed that Petitioner would be entitled to a presumption that he had a well-founded fear of future persecution, if his testimony were true.

The BIA affirmed the IJ's decision that evidence of a fundamental change in circumstances in India rebutted this presumption. The IJ relied on State Department and Central Intelligence Agency (CIA) reports. Most specifically, the IJ noted that the Akali Dal (Mann) "is a legal political party in India and continues to run candidates for office." However, the only apparent basis in the record for the IJ's statement is the CIA profile of India, which stated that, at around the time of the hearing, the "Shiromani Akali Dal" party held at least four seats in India's legislature. The profile did not indicate whether these seats were held by the Akali Dal (Mann) party or whether members of that party were subject to persecution. This evidence was not tailored to Petitioner, so the IJ did not make an individualized determination that changed conditions in India would affect Petitioner's circumstances. Thus, assuming that Petitioner's credible testimony

supported a presumption that he had a well-founded fear of future persecution, DHS did not rebut it.  See, e.g., Marcos v. Gonzales, 410 F.3d 1112, 1120-21 (9th Cir. 2005); Gonzalez-Hernandez v. Ashcroft, 336 F.3d 995, 997 (9th Cir. 2003) (citing Garrovillas v. INS, 156 F.3d 1010, 1017 (9th Cir. 1998)).

Petitioner also challenges the denial of his request for relief under the CAT. The BIA summarily affirmed the IJ's decision that, even if true, Petitioner's testimony would not establish that it is more likely than not that a government official or person acting in an official capacity would torture him if he returned to India.  On appeal, Petitioner does not identify evidence justifying a contrary conclusion.

In sum, we conclude that the BIA's adverse credibility finding was not supported by substantial evidence and that the evidence supplied by DHS would not have rebutted a presumption that Petitioner had a well-founded fear of future persecution upon return to India.  However, the BIA's denial of relief under the CAT is supported by substantial evidence.

As noted above, neither the BIA nor the IJ expressly ruled on whether Petitioner's testimony, if credible, supported his claims for asylum and withholding of removal.  Accordingly, we grant the petition for review in part and remand Petitioner's case to determine whether he is eligible for asylum or

withholding of removal.  See INS v. Orlando Ventura, 537 U.S. 12, 16 (2002)

(stating that "the proper course, except in rare circumstances, is to remand to the

agency for additional investigation") (citation and internal quotation marks

omitted).  On remand, Petitioner's testimony concerning the arrest and

disappearance of his brother, Geswinder Singh, shall be deemed credible.  The

petition for review is denied to the extent that it is based on the denial of relief

under the CAT.

**PETITION GRANTED IN PART AND DENIED IN PART, AND**

**REMANDED.**  Costs on appeal are awarded to the petitioner.

*Singh v. Holder*, No. 09-73276

BYBEE, Circuit Judge, dissenting:

I dissent. We are required to defer to the factfinding conducted by the Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA") unless "no reasonable factfinder could have reached the agency's result." *Don v. Gonzales*, 476 F.3d 738, 741 (9th Cir. 2007) (quoting *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005)). Ignoring this deferential standard of review, the panel majority overturns the IJ's adverse credibility determination based purely on speculative arguments that Petitioner never advanced before the BIA, in his briefs, or at oral argument.

Petitioner Ajit Singh ("Singh") seeks asylum on the basis that he was persecuted in India because of his activities on behalf of the Akali Dal (Mann) Party ("ADM"), a secessionist movement which supports the creation of an independent state for Sikhs called "Khalistan." Singh had testified that he had become involved in the ADM through his brother, and that he spoke out at an ADM rally after his brother was allegedly arrested and detained for his pro-Khalistan views. He claims that since his brother's arrest, he remains unaware of his brother's whereabouts. On account of his involvement with the ADM and his relationship with his brother, Singh claims that the Punjab state police targeted him. Fearing for his life, Singh went into hiding and eventually fled India.

The IJ did not believe Singh's story. The IJ's adverse credibility determination was based upon a United Nations ("UN") report that contradicted Singh's testimony that his brother was arrested and detained in a police raid of *Today's Voice*, a newspaper which supports the creation of Khalistan. Singh had testified that the police arrested eight people in the raid, and that his brother, Geswinder Singh, was one of the eight. The UN report on the *Today's Voice* raid identified the eight people who were arrested; Singh's brother's name was not listed. The IJ found that this inconsistency went to the heart of Singh's asylum application. Singh had testified that he joined the ADM in part because of his brother's influence and that it was his brother's arrest after the *Today's Voice* raid which prompted him to speak out at the ADM rally on January 26, 1994. Singh further claimed that it was his participation in that rally which allegedly made him a target for the police and prompted him to go into hiding. Lack of credibility on Singh's testimony about his brother's arrest would therefore call into doubt whether Singh and his family actually suffered political persecution in India at all.

Contrary to the majority's analysis, Singh did have an opportunity to explain this contradiction before the IJ. When pressed for an explanation, Singh suggested that his brother might have been using a different name, but that he was never aware that his brother used a name other than Geswinder Singh.

2

Contrary to what the majority concludes, the IJ directly addressed Singh's contradictory testimony, discussed his purported explanation, and rejected it. The IJ was correct to reject Singh's purported explanation that his brother might have been using a different name, since it amounted to nothing more than speculation. Singh nonetheless had another opportunity to explain the contradiction in his appeal to the BIA. Instead, his brief before the BIA repeats the explanation Singh offered before the IJ and also suggests, without any basis, that the UN report might have been inaccurate. Singh's briefs before this court likewise repeat these arguments without further elaboration. These non-responsive explanations do not compel a reasonable factfinder to conclude that the IJ erred in deeming Singh not credible.

In the face of substantial evidence supporting the IJ's adverse credibility determination, the majority manufactures speculative arguments in its efforts to explain away the contradictions in Singh's testimony. The majority argues that "[i]t is not clear that [Singh]'s brother's name was not in the [UN] report" because of "potential variations in the English spelling of Punjabi names." Maj. Memo. at 4. Singh never made this argument before the IJ, the BIA, or in his briefs to this court. At oral argument, Singh's counsel noted for the first time that the name Jasbir Singh, which is mentioned in the UN report, was "similar" to the name of

Singh's brother, Geswinder Singh, and implied that the report might actually be referring to "Geswinder" when it mentions "Jasbir." When asked whether the names "Jasbir" and "Geswinder" were equivalent names in India, however, counsel equivocated, and simply repeated her assertion that the names were "similar." Further, the UN report does not actually list the name "Jasbir Singh," but instead names two people with similar names: "Jasbir Singh Khalsa" and "Jasbir Singh Manowan." At argument, Singh's counsel conceded that "Jasbir Singh Manowan" did not refer to Singh's brother. When asked whether the name "Jasbir Singh Khalsa" bore any relationship to Singh's family, counsel responded "no," but then explained that "Khalsa" was not a family name, but a title used by some supporters of an independent Khalistan. Counsel nonetheless conceded that Singh never testified that "Jasbir Singh Khalsa" might have actually referred to his brother, Geswinder Singh.

The panel appears to assume that the requirement that the IJ provide "a specific, cogent reason" for an adverse credibility determination is license for us to conduct de novo review of the record and to introduce facts and arguments that were never presented by the parties. *See generally Hartooni v. I.N.S.*, 21 F.3d 336, 342 (9th Cir. 1994) ("[T]he [IJ] must have a legitimate articulable basis to question the petitioner's credibility, and must offer a specific, cogent reason for any stated

4

disbelief."). In doing so, the majority forgets that it is the *petitioner's* burden, not the court's, to explain why no reasonable factfinder could have reached the IJ's result. *See Li v. Ashcroft*, 378 F.3d 959, 964 (9th Cir. 2004) ("So long as one of the identified grounds is supported by substantial evidence and goes to the heart of [petitioner's] claim of persecution, we are bound to accept the IJ's adverse credibility finding." (quoting *Wang v. I.N.S.*, 352 F.3d 1250, 1259 (9th Cir. 2003) (first alteration omitted)). *See also* 8 U.S.C. § 1252(b)(4)(A) ("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based."). Here, Singh's testimony about his brother's arrest was contradicted by an official UN report, which did not list his brother's name among those who were arrested. This contradiction formed a "legitimate articulable basis to question [Singh's] credibility." *Hartooni*, 21 F.3d at 342. The IJ further explained that this contradiction went to the heart of Singh's application because his brother played a central role in Singh's purported narrative. If this does not form a "specific, cogent reason" to support the IJ's adverse credibility finding, then I do not know what does.

Because Singh points to no evidence that compels us to conclude that the IJ erred, I would deny the petition for review.