**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CARLOS JAIME MADRID, AKA Manuel Contreras, AKA Carlos Jaime Madrid-Cabrera, <br><br> Petitioner, <br><br> v. <br><br> ERIC H. HOLDER, Jr., Attorney General, <br><br> Respondent. | No. 12-70541 <br><br> Agency No. A095-656-580 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted September 12, 2013
San Francisco, California

Before: WALLACE and BERZON, Circuit Judges, and ZOUHARY, District
Judge.[**]

Carlos Jaime Madrid petitions for review of a final order of the Board of

Immigration Appeals (Board) holding him removable, and declaring him ineligible

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Jack Zouhary, District Judge for the U.S. District Court for the Northern District of Ohio, sitting by designation.

for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). The petition is denied.

An alien is ineligible for withholding of removal if the alien, "having been convicted by a final judgment of a particularly serious crime[,] is a danger to the community of the United States." *Anaya-Ortiz v. Holder*, 594 F.3d 673, 675 (9th Cir. 2010) (quoting 8 U.S.C. § 1231(b)(3)(B)(ii)). Likewise, an alien who has been convicted of a "particularly serious crime" is ineligible for both asylum and withholding of removal under the CAT. *Arbid v. Holder*, 700 F.3d 379, 385 (9th Cir. 2012); *Delgado v. Holder*, 648 F.3d 1095, 1105 n.14 (9th Cir. 2011) (en banc).

As we explained in *Delgado*, the Attorney General "has the authority to designate offenses as particularly serious crimes through case-by-case adjudication of individual asylum applications." *Delgado*, 648 F.3d at 1106. In determining whether an alien has committed a particularly serious crime, the Board is to consider "the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community." *Id.* at 1107. Moreover, although crimes against persons are "more likely" to be characterized as particularly serious crimes than other types of offenses, "there may be instances where crimes (or a crime) against property will

2

be considered as such crimes." *Alphonsus v. Holder*, 705 F.3d 1031, 1039 (9th Cir. 2013) (quoting *Matter of Frentescu*, 18 I. & N. Dec. 244, 247 (B.I.A. 1982)). The Board's determination that an alien has committed a particularly serious crime is a discretionary decision, which we accordingly review for abuse of discretion. *See id.* at 1043. Under this standard of review, "we may disturb the [Board's] ruling if the [Board] acted arbitrarily, irrationally, or contrary to law." *Id.*

The Board did not abuse its discretion in determining that the crime of which Madrid was convicted was a "particularly serious crime." Madrid pleaded guilty to "maliciously and intentionally" harming a poodle, in violation of Cal. Penal Code § 597(a), and was sentenced to two years in prison. In particular, Madrid pleaded guilty to "maliciously and intentionally maim[ing], mutilat[ing], tortur[ing], or wound[ing] a living animal, or maliciously and intentionally kill[ing] an animal." Cal. Penal Code § 597(a). As the Board observed, Madrid also pleaded guilty to using a knife in the commission of this crime. The Board concluded that the "totality of evidence shows that [this] crime is particularly serious," insofar as it involved "extreme violence perpetrated against a living creature." We agree that using a knife to "maliciously and intentionally" commit cruelty to animals, in one of the ways specified by Cal. Penal Code § 597(a), constitutes an act of "extreme violence perpetrated against a living creature."

3

Thus, we conclude that the Board's determination that Madrid committed a particularly serious crime was neither arbitrary, irrational, nor contrary to law. *Alphonsus*, 705 F.3d at 1043.

The Board acknowledged that Madrid testified that he had merely, and inadvertently, placed the poodle in a bath containing hot water, after which the poodle's owner paid a veterinarian to put the poodle to sleep. This testimony is belied by the fact that Madrid pleaded guilty to using a knife to "maliciously and intentionally" harm the poodle. Thus, the Board concluded that "despite this testimony," and in light of the "totality of evidence," Madrid had committed a particularly serious crime. Even though we generally accept as true a petitioner's testimony absent an adverse credibility finding, *Cole v. Holder*, 659 F.3d 762, 770 (9th Cir. 2011), here, Madrid's testimony as to his prior crime is refuted by record evidence of his guilty plea and conviction. Insofar as the totality of the evidence shows that Madrid pleaded guilty to using a knife to "maliciously and intentionally" harm the poodle, and was sentenced to two years in prison for doing so, we hold that the Board did not act arbitrarily, irrationally, or contrary to law in determining that the evidence of Madrid's conviction told the full story rather than his assertion that he had merely scalded the dog in the bath.

4

As we recently observed, the "currently operative legal standard" regarding the determination of particularly serious crimes is as follows: "[A] crime is particularly serious if the nature of the conviction, the underlying facts and circumstances and the sentence imposed *justify the presumption that the convicted immigrant is a danger to the community*." *Alphonsus*, 705 F.3d at 1041 (emphasis in original). It is not arbitrary, irrational, or contrary to law to conclude that one who maliciously and intentionally commits an act of cruelty against a living animal is "a danger to the community." Accordingly, we affirm the Board's determination that Madrid committed a particularly serious crime.

We affirm the Board's denial of deferral of removal under CAT. Although Madrid established that he remains in danger of being attacked due to his homosexuality if he returns to Mexico, the record does not "compel[]" the conclusion that the government would acquiesce in his torture at the hands of private parties. 8 C.F.R. § 1208.18(a)(1). Indeed, Madrid testified that the government investigated and prosecuted some of the individuals who attacked him in his youth. Moreover, although a police officer severely mistreated Madrid on a single occasion, Madrid failed to establish that the officer's conduct rose to the level of torture, or was likely to recur. *See Boer-Sedano v. Gonzales*, 418 F.3d 1082, 1092 (9th Cir. 2005).

5

**PETITION FOR REVIEW DENIED.**

*Madrid v. Holder*, No. 12-70541

BERZON, Circuit Judge, dissenting in part:

I join the majority with regard to Madrid's claim for deferral of removal under the Convention Against Torture ("CAT"). But I would hold that the BIA abused its discretion in holding that Madrid's conviction for cruelty to animals under California Penal Code § 597(a) qualifies as a "particularly serious crime," rendering him ineligible for asylum or withholding of removal. *See* 8 U.S.C. §§ 1158(b)(2)(A), 1231(b)(3)(B)(ii).

"[T]he BIA abuses its discretion when it fails to provide a reasoned explanation for its actions[,]" *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005), or when "it fails to 'indicate how it weighed the factors involved and how it arrived at its conclusion[.]'" *Alphonsus v. Holder*, 705 F.3d 1031, 1044 (9th Cir. 2013) (citations omitted).

Madrid testified that he scalded the dog in the bath, causing its skin to peel off — but that he did not kill the dog. Rather, the dog's owner took the dog to the veterinarian and they "g[a]ve him a shot, and put him to sleep[.]" The immigration judge made an explicit, positive credibility determination, which the BIA did not overturn. Madrid is therefore entitled to the presumption of credibility, *Yazitchian v. INS*, 207 F.3d 1164, 1168 (9th Cir.2000); and we are bound to accept his testimony as true, *Cole v. Holder*, 659 F.3d 762, 770 (9th Cir. 2011).

Notwithstanding Madrid's "credible" testimony, the BIA found that Madrid was convicted of "'maliciously and intentionally' torturing, skinning, wounding, mutilating, *and* killing a dog." This conclusion is neither consistent with Madrid's testimony, nor compelled by the record of conviction. California Penal Code § 597(a) provides that "every person who maliciously and intentionally maims, mutilates, tortures, or wounds a living animal, or maliciously and intentionally kills an animal, is guilty of a crime. . . ." As it is written in the disjunctive, a conviction under this provision does not necessarily involve killing a dog.

Moreover, although the indictment was charged in the conjunctive, "[w]here a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count and proof of any one of those acts conjunctively charged may establish guilt." *United States v. Bonanno*, 852 F.2d 434, 441 (9th Cir. 1988). "All that [I] can gather from the charge and the bare record of a plea of guilty, therefore, is that [Madrid] was guilty of" at least one of the listed acts. *Malta-Espinoza v. Gonzales*, 478 F.3d 1080, 1082 (9th Cir. 2007) (interpreting a conviction where the complaint was charged conjunctively, but the statute was worded in the disjunctive).

The Board failed to explain how it reconciled its particularly serious crime holding with Madrid's "credible" testimony and the statutory text. A finding that

2

Madrid, in fact, killed the dog may have been critical to the BIA's holding — particularly because "[c]rimes against persons are more likely to be categorized as 'particularly serious crimes,'" *In re Frentescu*, 18 I. & N. Dec. 244, 247 (B.I.A. 1982), and I know of no other case in which a crime involving harm to an animal has been held to be particularly serious.

As I "cannot discern . . . the operative rationale of the particularly serious crime determination[,]" I would remand to the BIA for further explanation as to how it arrived at its conclusion. *Alphonsus*, 705 F.3d at 1044 (citation omitted).